**2020 IL 124940**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 124940)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
DEMARIO D. REED, Appellant.

*Opinion filed December 3, 2020.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Garman, Theis, and Neville concurred in the judgment and opinion.

Justice Michael J. Burke specially concurred, with opinion.

## OPINION

¶ 1    This case presents the issue of whether a guilty plea prevents a defendant from asserting an actual innocence claim under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The Appellate Court, Fourth District, answered in the affirmative and affirmed the denial of defendant's petition on this

basis. See 2019 IL App (4th) 170090. For the reasons below, we reject the appellate court's conclusion that a guilty plea forecloses a claim of actual innocence under the Act but nevertheless affirm the denial of defendant's claim on the merits.

¶ 2                                                    BACKGROUND

¶ 3         On September 29, 2014, defendant was charged by information with a count of armed violence (720 ILCS 5/33A-2(a) (West 2014)) in that, while armed with a shotgun, defendant possessed less than 15 grams of cocaine. Defendant was also charged with unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2014)), and unlawful possession of a controlled substance (*id.* § 402(c)).

¶ 4         The charges were supported by an officer's sworn testimony to the following. While patrolling in a marked patrol car, the officer observed several subjects sitting on the front porch of a residence located in an area that was viewed as a high-crime area and where large amounts of narcotics were sold. Upon seeing an officer exiting the car to make voluntary contact with the subjects, defendant jumped up and ran inside the house. The owner of the residence later informed the officer that defendant did not have permission to enter the residence.

¶ 5         The officer further observed that, as defendant jumped up, he grabbed the right side of his right leg just above the knee and continued to do so as he ran into the residence. The police report described defendant's leg as stiff and not bending normally.

¶ 6         Soon after defendant ran inside, the second subject, Davie Callaway, fled from the couch into the dining room. The third subject stayed seated on the couch with his hands in the air. After the other subjects were secured, the officer located defendant lying facedown on a bed in a bedroom located on the southwest corner of the house.

¶ 7         The officers then searched defendant's flight path, which was described by two witnesses inside the residence. By the bed in the northwest bedroom, officers recovered a cellophane wrapper for a cigarette pack that contained 0.4 grams of crack cocaine. Under the bed, the officers discovered a sawed-off shotgun that was

situated in a manner that indicated it had been thrown underneath the bed. The police report noted moisture in the area of the barrels, which indicated that the shotgun had not been underneath the bed for very long and most likely had been left outside for a period of time. The officer further explained in the police report that "firearms are often concealed outside in a location that is quickly and easily accessible by the offender, but not actually possessed by the offender should the Police arrive."

¶ 8    Upon a search incident to arrest, officers further found approximately 1.5 grams of suspected crack cocaine on Davie Callaway and a digital scale on defendant.

¶ 9    After defendant's unsuccessful motion to dismiss the charges, the parties presented to the court a plea agreement under which defendant would plead guilty to one count of armed violence in exchange for a sentence of 15 years' imprisonment. As its factual basis to support the plea, the State averred that "Officer Daniels would testify that he observed" "the defendant flee upon sight of him. The defendant was running oddly. When he entered the house, he located a shotgun and cocaine. The defendant was located in a bedroom, and the shotgun had the defendant's DNA on it." The court then properly admonished defendant pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). After confirming the plea was made knowingly and voluntarily, the court accepted the plea and found defendant guilty of armed violence (720 ILCS 5/33A-2(a) (West 2014)). On April 13, 2015, defendant was sentenced to 15 years' imprisonment. The court then granted the State's motion to dismiss and strike the remaining counts against defendant.

¶ 10    Defendant's initial post-conviction petition under the Act (725 ILCS 5/122-1 *et seq.* (West 2016)) asserted an actual innocence claim and an ineffective assistance of counsel claim but was summarily dismissed as frivolous. Subsequently, on January 20, 2016, defendant filed a motion for leave to file a successive post-conviction petition asserting actual innocence. [1] Defendant specifically alleges that it is undisputed that he did not reside at the residence in which the gun and drugs were found and that he has "absolutely zero knowledge of what is within that residence." Also, no DNA links defendant to the drugs. He

---

[1]Defendant also asserted an ineffective assistance of counsel claim. However, this claim is not an issue before this court.

further noted that the gun was found not on his person but under the bed in a different room from where he was apprehended.

¶ 11 Unlike his initial petition, defendant attached the affidavit of Davie Callaway to support his claim of innocence, which was dated October 15, 2015. Callaway averred that he was the sole owner of the cocaine found in the residence and that defendant had zero knowledge of the presence of cocaine in that residence. Callaway's testimony lacked any reference to the shotgun.

¶ 12 The circuit court allowed leave to file the petition. The State filed a motion to dismiss, arguing, *inter alia*, that defendant could not assert a freestanding claim of innocence. It relied on *People v. Barnslater*, 373 Ill. App. 3d 512, 527 (2007), *rev'd on other grounds*, *People v. Robinson*, 2020 IL 123849, ¶ 55, which stated in *dicta* that "defendant's postconviction claim of actual innocence cannot be deemed to deprive him of his due process rights in the face of the fact that the defendant previously confessed to the commission of the crime in his plea."

¶ 13 Defendant's petition proceeded to a third stage evidentiary hearing, where Callaway testified in accordance with his affidavit. On cross-examination, Callaway admitted he did not write the affidavit until he was imprisoned with defendant. He further acknowledged speaking with defendant about his intention to provide the affidavit while imprisoned together but claimed that defendant never requested him to write it. Callaway explained that he felt bad that defendant was charged with possession because of him.

¶ 14 On January 20, 2017, the circuit court denied defendant's petition. It found Callaway's testimony was new but not credible, specifically noting that he did not come forward until after he pled guilty and was in the same prison as defendant. It also found that Callaway's affidavit was not of such conclusive character that it would probably change the result on retrial because, at the time of defendant's plea, defendant knew pointing the fault at codefendants for possessing the drugs was a viable defense. Defendant appealed.

¶ 15 The appellate court affirmed but on different grounds. It found that a valid guilty plea forecloses a post-conviction claim of actual innocence. See 2019 IL App (4th) 170090. In support of its holding, the appellate court relied upon *People v. Cannon*, 46 Ill. 2d 319, 321 (1970), wherein this court stated: " 'Before his plea of

- 4 -

guilty was accepted, the defendant, represented by appointed counsel, was fully and carefully admonished by the trial judge, and in the light of that admonition, the defendant's present [innocence] claim cannot be entertained.' " 2019 IL App (4th) 170090, ¶ 19 (quoting *Cannon*, 46 Ill. 2d at 321). Although it acknowledged this statement was *obiter dicta*, without an explicit decision from this court to the contrary, it found it was bound to follow *Cannon*. Therefore, in agreement with the First District in *Barnslater*, it found defendant's innocence claim cannot be entertained because he knowingly and voluntarily pled guilty to the charge of which he now claims to be innocent. *Id.* ¶ 17. Furthermore, the appellate court found that to allow defendant to knowingly and voluntarily plead guilty and then turn around to complain to a reviewing court that the trial court found him guilty is "paradoxical if not duplicitous." *Id.* ¶ 26. If there is any error, it is an error that defendant invited himself by pleading guilty to armed violence. *Id.*

¶ 16       We granted defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. July 1, 2018).

¶ 17                                         ANALYSIS

¶ 18       This appeal arises from defendant's post-conviction petition under the Act, which provides a statutory remedy to defendants who claim substantial violations of their rights occurred in the proceedings that resulted in their conviction. *People v. English*, 2013 IL 112890, ¶ 21. A post-conviction petition is not a substitute for appeal but, rather, is a collateral attack. *Id.* Accordingly, issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *Id.* ¶ 22. Defendant bears the burden of proving that a substantial violation occurred. *Id.* ¶ 21.

¶ 19       Over 20 years ago, in *People v. Washington*, 171 Ill. 2d 475, 489 (1996), this court found a freestanding claim of actual innocence is cognizable under the Act. We reasoned that the "[i]mprisonment of the innocent would also be so conscience shocking as to trigger operation of substantive due process." *Id.* at 487-88. Also, to ignore such a claim would be fundamentally unfair in terms of procedural due process. *Id.* at 487.

¶ 20    This case presents the issue of whether a guilty plea prevents a defendant from asserting an actual innocence claim under the Act. This issue involves questions of law that are subject to *de novo* review. *Brunton v. Kruger*, 2015 IL 117663, ¶ 72.

¶ 21    The appellate court relied on *Cannon*, which considered claims in defendant's petition that were not argued on appeal after determining the issue before the court lacked merit. *Cannon*, 46 Ill. 2d at 321. The *Cannon* court found the unargued claims "amount basically to an unsupported assertion that the accusation against him was false and that his daughter and two of his sons were coerced by threats from their mother, the defendant's wife." *Id.* The court further noted: "Before his plea of guilty was accepted, the defendant, represented by appointed counsel, was fully and carefully admonished by the trial judge, and in the light of that admonition, the defendant's present claim cannot be entertained." *Id.*

¶ 22    However, not all Illinois decisions agree that *Cannon* controls this issue. In *People v. Shaw*, 2019 IL App (1st) 152994, ¶ 54, the First District disagreed with the appellate court decision here and found that a guilty-plea defendant may bring an actual innocence claim without challenging the validity of the plea. It first determined that *Washington* made no distinction between defendants whose convictions arise out of a trial or out of a guilty plea in holding that "no person convicted of a crime should be deprived of life or liberty given compelling evidence of actual innocence" and that it believed the tenet should apply equally in either circumstance. (Emphasis omitted.) *Id.* ¶ 45. In explaining its departure from *Reed*, 2019 IL App (4th) 170090, the *Shaw* court found that the statement in *Cannon* was not only *dicta* but too imprecise to express this court's explicit intention to create such a significant rule. *Shaw*, 2019 IL App (1st) 152994, ¶ 52. It also noted that *Reed* is only the third case to cite *Cannon* for any purpose and that no other case has read *Cannon* to create "a categorical bar." *Id.* ¶ 49. Therefore, in light of this court's more recent statements in *Washington*, *Cannon*'s *dicta* cannot be read to prohibit actual innocence claims following guilty pleas in all circumstances. *Id.* ¶ 52.

¶ 23    The issue of actual innocence was not briefed nor argued before the court and was not essential to the disposition in *Cannon*. As acknowledged by the Fourth and First Districts, *Cannon*'s statements are therefore *dicta*, which is not binding on this court. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010). This

statement was made in the context of an unsupported claim and before this court recognized that a freestanding claim of innocence was cognizable under the Act as a matter of due process. *Washington*, 171 Ill. 2d at 487-88. We therefore find the scant analysis and resulting *obiter dicta* of *Cannon* does not control this case.

¶ 24 Consequently, the issue of whether defendants who plead guilty waive any claim of actual innocence under the Act is one of first impression. To determine whether there is waiver, we must consider the motives behind and consequences of a plea in light of the precise challenge asserted by an actual innocence claim. *People v. Phipps*, 238 Ill. 2d 54, 62 (2010). Issues of waiver are construed liberally in favor of the defendant. *Id.*

¶ 25 Negotiated guilty pleas are the result of an agreement between the State and defendant, in which both parties benefit and make concessions. *People v. Eckhardt*, 127 Ill. 2d 146, 151-52 (1989). The State benefits from the prompt and largely final disposition of most criminal cases, which preserves prosecutorial and judicial resources for cases in which there are substantial issues of proof. *People v. Boyt*, 109 Ill. 2d 403, 416 (1985); *Brady v. United States*, 397 U.S. 742, 752 (1970). These benefits motivate the State to make certain concessions, including sacrificing the opportunity to present the entirety of the evidence, dismissal of certain charges, and ceasing further investigation that may result in additional charges.

¶ 26 Defendants also incur substantial benefits and burdens as the result of a plea agreement. To defendants' benefit, they can obtain a favorable sentence and dismissal of other charges. *Talarico v. Dunlap*, 177 Ill. 2d 185, 195 (1997); *People v. Jones*, 144 Ill. 2d 242, 269-70 (1991). They also avoid the agony and cost of trial. *Talarico*, 177 Ill. 2d at 195; *Brady*, 397 U.S. at 752.

¶ 27 The consequences of a plea for a defendant, however, are severe. *People v. Evans*, 174 Ill. 2d 320, 326 (1996). A guilty plea is an admission of guilt and a conviction in and of itself. *People v. White*, 2011 IL 109616, ¶ 17 ("The plea obviates the prosecution's burden of proof. It supplies both evidence and verdict, ending controversy." (Internal quotation marks omitted.)). It is specifically designed to waive the right to a jury trial, relieving the State of its burden to prove defendant guilty beyond a reasonable doubt. *People v. Townsell*, 209 Ill. 2d 543, 547 (2004) (citing *Hill v. Cowan*, 202 Ill. 2d 151, 154 (2002)). As such, by pleading, a defendant "waives all nonjurisdictional defenses or defects," including

constitutional ones. *People v. Burton*, 184 Ill. 2d 1, 27 (1998); *Townsell*, 209 Ill. 2d at 545.

¶ 28 Because a plea entails significant consequences for both parties, the State argues that defendant cannot now assert a claim of innocence. Specifically, the State highlights the defendant's waiver of his right to a jury trial, to present defenses, and to proof beyond a reasonable doubt. It also contends that allowing a claim of innocence would dissuade it from entering plea negotiations where the benefit of finality and certainty that motivates it to make concessions may be collaterally attacked. We disagree.

¶ 29 In *Washington*, this court held that our constitution affords additional due process when newly discovered evidence shows that a convicted person is actually innocent on the basis that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2; *Washington*, 171 Ill. 2d at 487-89. We clarified that the claim does not depend on—and is separate from—a challenge to the sufficiency of the evidence or an allegation of error in the court below. *Washington*, 171 Ill. 2d at 487.

¶ 30 In addressing the federal precedent on the matter, we explicitly rejected the notion that a defendant must be viewed as guilty absent a constitutional error in the underlying proceedings. *Id.* at 488. This is so because a strong claim of innocence undermines the legal construct that precludes a substantive due process analysis and dictates defendant be viewed as guilty. *Id.* At the point where the evidence undermines the court's confidence in this legal construct, the additional due process afforded by our constitution is triggered. *Id.*

¶ 31 Upon a closer examination of *Washington* and the precise contentions of an actual innocence claim, the State's arguments are unconvincing. Because the claim does not assert a challenge to the sufficiency of the evidence or any error in the proceedings that led to the conviction (*id.*), defendant's waiver of his right to challenge the State's proof of guilt beyond a reasonable doubt at trial should not impact his actual innocence claim. Significantly, the State and appellate court overlooked that a " 'truly persuasive demonstration of innocence' " breaks the barriers established by the legal construct that precludes a substantive due process

analysis and dictates that the defendant be viewed as guilty. *Id.* We find this rationale applies with no less force in the context of guilty pleas.

¶ 32    The purpose of our criminal justice system is to seek justice. *United States v. Nobles*, 422 U.S. 225, 230 (1975) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)); *Washington*, 171 Ill. 2d at 493 (McMorrow, J., specially concurring). Justice means not only punishing the guilty but also ensuring the innocent do not suffer. *Nobles*, 422 U.S. at 230 (citing *Berger*, 295 U.S. at 88). We note that, as a part of the criminal justice system, the prosecution has the same duty and interest in seeking the truth and justice. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) ("The prosecutor's interest in a criminal prosecution is not that it shall win a case, but that justice shall be done." (Internal quotation marks omitted.)).

¶ 33    Plea agreements, while vital to our criminal justice system (*Evans*, 174 Ill. 2d at 325), are not structured to "weed out the innocent" or guarantee the factual validity of the conviction (*Schmidt v. State*, 909 N.W.2d 778, 788 (Iowa 2018)). See *Missouri v. Frye*, 566 U.S. 134, 144 (2012) (" 'To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is.' " (quoting Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1912 (1992))); *Brady*, 397 U.S. at 757-58 ("This is not to say that guilty plea convictions hold no hazards for the innocent or that the methods of taking guilty pleas presently employed in this country are necessarily valid in all respects. This mode of conviction is no more foolproof than full trials to the court or to the jury."). The plea system encourages defendants to engage in a cost-benefit assessment where, after evaluating the State's evidence of guilt compared to the evidence available for his defense, a defendant may choose to plead guilty in hopes of a more lenient punishment than that imposed upon a defendant who disputes the overwhelming evidence of guilt at trial. See *Jones*, 144 Ill. 2d at 269; *Brady*, 397 U.S. at 756. As such, it is well accepted that the decision to plead guilty may be based on factors that have nothing to do with defendant's guilt. See *Brady*, 397 U.S. at 757-58; *Talarico*, 177 Ill. 2d at 195. Empirical data related to exonerations further prove that innocent people plead guilty, as 18% of all exonerees and 11% of those exonerated through DNA pled guilty. Peter A. Joy & Kevin C. McMunigal, *Post-Conviction Relief After a Guilty Plea?* 35 Crim. Just. 53, 55 (Summer 2020).

¶ 34    Importantly, our rules allow the court to accept a plea of guilty even where defendant asserts his innocence, as long as a sufficient factual basis exists and the court satisfies the other requirements delineated in Illinois Supreme Court Rule 402 (eff. July 1, 2012). *People v. Gaines*, 2020 IL 125165, ¶ 36. Unlike a conviction after trial, where the State's evidence is scrutinized and must meet the beyond a reasonable doubt standard, the factual basis to support the plea is held to a less stringent level of proof, requiring only a basis from which the court could reasonably conclude that defendant actually committed the acts constituting the offense to which defendant is pleading guilty. *People v. Barker*, 83 Ill. 2d 319, 327-28 (1980).

¶ 35    Accordingly, pleas are no more foolproof than trials. *Brady*, 397 U.S. at 758. When met with a truly persuasive demonstration of innocence, a conviction based on a voluntary and knowing plea is reduced to a legal fiction. *Washington*, 171 Ill. 2d at 488. At that point, the additional due process afforded by the Illinois due process clause is triggered despite the legal construct—the entire plea proceedings including defendant's waiver of all nonjurisdictional defects—that precludes a guilty-plea defendant's claim. *Id.*

¶ 36    Moreover, we emphasize this court's long-established preference for life and liberty over holding defendant to his plea. *People v. King*, 1 Ill. 2d 496, 500 (1953) (*per curiam*); *People v. McKirdie*, 45 Ill. 2d 300, 302 (1970). Recently, in *Gaines*, 2020 IL 125165, ¶¶ 43-44, we reaffirmed that courts may allow defendants to withdraw their pleas based on claims of innocence or where the court doubts the truth of the pleas, even where the court already accepted the plea. In *People v. Belcher*, 199 Ill. 2d 378, 383 (2002), we also allowed a defendant to file a motion to withdraw his plea based upon a misunderstanding of law regarding his insanity defense for the first time on appeal. While the issue of waiver by plea was not raised in the above cases, they support the conclusion that sometimes a manifest injustice outweighs the consequences of defendant's voluntary plea.

¶ 37    In light of these considerations, we find the defendant's waiver of his right to challenge the State's proof of guilt beyond a reasonable doubt at trial in the proceedings that led to his conviction does not prevent him from asserting his right to not be deprived of life and liberty given compelling evidence of actual innocence under the Act.

¶ 38    For the same reasons, we also reject the State's contention that the record of the plea proceedings positively rebuts any claim of actual innocence. An admission of guilt—while often sufficient to support the acceptance of the plea and a conviction—is not guilt in fact. *Gaines*, 2020 IL 125165, ¶ 32 (trial judge decides whether to accept the plea and "legally deem the defendant guilty of the relevant charge"); see *Talarico*, 177 Ill. 2d at 195 (It is not always reasonable to presume that defendant's admission of guilt pursuant to his negotiated plea establishes a fact that cannot be relitigated.).

¶ 39    The State's application of the invited error doctrine is equally unpersuasive. The invited error doctrine is akin to equitable estoppel in that a party "may not request to proceed in one manner and then later contend *** that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). Under this doctrine, the State claims defendants cannot voluntarily and knowingly plead guilty to the trial court then turn around and complain to a reviewing court that the trial court found them guilty.

¶ 40    As explained above, a claim of innocence is not based on the defendant's misapprehension of the quality of the State's case nor an error of the court in finding defendant guilty. Rather, it is a request for the additional due process that is triggered by new and compelling evidence demonstrating defendant's innocence. *Washington*, 171 Ill. 2d at 487. Defendant did not invite the deprivation of his liberty despite compelling evidence of his innocence when he lacked knowledge of and could not reasonably discover such evidence at the time of his plea.

¶ 41    This court refuses to turn a blind eye to the manifest injustice and failure of our criminal justice system that would result from the continued incarceration of a demonstrably innocent person, even where a defendant pleads guilty. See *id.* at 489; *id.* at 493 (McMorrow, J., specially concurring). Accordingly, we find defendants who plead guilty may assert an actual innocence claim under the Act. *Shaw*, 2019 IL App (1st) 152994, ¶ 54; *People v. Knight*, 405 Ill. App. 3d 461, 472 (2010).

¶ 42    Despite the State's contentions, we do not believe our decision will diminish its motivation to engage in plea negotiations, nor does it ignore the interests of finality and certainty involving guilty pleas. An actual innocence claim is not unrestrained and still must be proven. This hurdle has proven to be difficult for defendants, and a successful claim of innocence is rare. See *People v. Coleman*, 2013 IL 113307,

¶ 94. As such, we find the State's interests and policy concerns are more appropriately accounted for and protected by the standard applicable to actual innocence claims involving defendants who plead guilty.

¶ 43    Defendant argues that this court should apply the standard expounded by *Washington*, which requires "supporting evidence be new, material, noncumulative and, most importantly, of such conclusive character as would probably change the result on retrial." (Internal quotation marks omitted.) *Washington*, 171 Ill. 2d at 489. While defendant contends *Washington* can be expanded to apply to defendants who plead guilty, he fails to specify such standard and only notes that the court should compare the new evidence against that in the plea proceedings below.

¶ 44    The State asserts that guilty-plea defendants are incapable of meeting the *Washington* standard because the court cannot determine whether the new evidence would probably change the result on retrial where there was no trial. Instead, this court should adopt a standard of reliability similar to that in federal courts, *Schlup v. Delo*, 513 U.S. 298 (1995), particularly, that guilty-plea defendants must provide new forensic evidence.

¶ 45    While defendant's plea does not prevent him from asserting an actual innocence claim under the Act, it necessarily places the court in a different position than in *Washington*. Defendant's waiver of a trial prevented the State from admitting the entirety of its evidence against defendant into the record, leaving only defendant's admission of guilt and stipulation of the factual basis of the plea. Without the developed record produced by a trial, a court cannot determine whether the new evidence sufficiently undermines the evidence presented at trial such that it would probably change the result on retrial. The strict application of *Washington* is therefore impractical in cases where defendants plead guilty.

¶ 46    Moreover, unlike a trial where reviewing courts often lack the insight on how the jury weighed the evidence in making its determination, the guilt of defendants who plead guilty is entirely dependent upon their admission of guilt and stipulation of the factual basis. Consequently, the court is left to weigh the new evidence against voluntary and knowing admission of guilt.

¶ 47    A plea of guilty is a grave act that is not reversible at the defendant's whim. *Evans*, 174 Ill. 2d at 326. Leave to withdraw a plea of guilty should not be granted

because defendant is now dissatisfied with the deal but "as required to correct a manifest injustice." *Id.*

¶ 48    Upon these considerations, the standard for actual innocence claims for guilty-plea defendants requires a more stringent standard than in *Washington*. See *People v. Schneider*, 25 P.3d 755, 761 (Colo. 2001) (*en banc*). Yet, the standard must be less than redeciding the defendant's guilt, as that is not the determination the court must make. See *People v. Molstad*, 101 Ill. 2d 128, 136 (1984) ("this does not mean that [the defendant] is innocent, merely that all of the facts and surrounding circumstances *** should be scrutinized more closely to determine [his] guilt or innocence"); *Coleman*, 2013 IL 113307, ¶ 97. "If it were, the remedy would be an acquittal, not a new trial." *Coleman*, 2013 IL 113307, ¶ 97.

¶ 49    We therefore find a successful actual innocence claim requires a defendant who pleads guilty to provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal. New means the evidence was discovered after the court accepted the plea and could not have been discovered earlier through the exercise of due diligence. *Id.* ¶ 96. This is a comprehensive approach where the court must determine whether the new evidence places the evidence presented in the underlying proceedings in a different light and "undercuts the court's confidence in the factual correctness" of the conviction. *Id.* ¶ 97.

¶ 50    This higher standard strikes an equitable balance between the defendant's constitutional liberty interest in remaining free of undeserved punishment and the State's interest in maintaining the finality and certainty of plea agreements, while vindicating the purpose of the criminal justice system to punish only the guilty. Because the evidence must be clear and convincing, the standard inherently requires the court to consider the evidence to be reliable.[2] We therefore see no reason to further limit defendants who plead guilty by requiring them to support their petition with forensic evidence.

---

[2]We note that, while post-conviction relief requires the court to consider the new evidence to be reliable, such determination should be made at a third-stage evidentiary hearing, as all well-pled facts must be taken as true at the motion to dismiss stage. *People v. Sanders*, 2016 IL 118123, ¶ 42.

¶ 51    Having found that a defendant who pleads guilty may assert an actual innocence claim and having clarified the applicable standard, we must address the merits of defendant's claim. In this case, defendant's petition was denied after a third-stage evidentiary hearing. 725 ILCS 5/122-6 (West 2016). At this stage, the trial court acts as a fact-finder, making credibility determinations and weighing the evidence. *English*, 2013 IL 112890, ¶ 23. Accordingly, we review the court's decision to deny relief for manifest error. *Coleman*, 2013 IL 113307, ¶ 98. Manifest error is " 'clearly evident, plain, and indisputable.' " *Id.* (quoting *People v. Morgan*, 212 Ill. 2d 148, 155 (2004)).

¶ 52    Although the circuit court lacked the guidance of this opinion regarding the applicable standard, it nevertheless found defendant did not meet the less stringent *Washington* standard. Defendant contends the trial court's denial was manifestly erroneous because it based its credibility determination regarding Callaway on a mistake of law. He explains that, absent inconsistences or obfuscations, the court should follow Callaway's undisputed testimony that he came forward based on his guilty conscience rather than question Callaway's credibility based on the fact that Callaway and defendant were in prison together, because they had no control over where they were imprisoned.

¶ 53    Based on our examination of the record, we cannot say that the trial judge's decision to reject Callaway's testimony was manifestly erroneous. Defendant's innocent explanations for the trial court's concerns regarding Callaway's credibility are plausible, but plausibility is not the test on review. *Morgan*, 212 Ill. 2d at 161. We addressed only whether the new evidence was sufficiently compelling that a decision by the trial court to reject that evidence was manifestly erroneous. *Id.*

¶ 54    We cannot say it was unreasonable for the court to question the truthfulness of Callaway, where he came forward only after being imprisoned and discussing the case with defendant. The trial court is in the best position to make this determination, as it had the benefit of observing Callaway's demeanor during examination and assessing his testimony against the other evidence. *Id.* at 162. There is nothing in the record to undermine its judgment in this case.

¶ 55    We therefore affirm the denial of defendant's petition.

¶ 56                                               CONCLUSION

¶ 57       In light of the rationale underlying *Washington*'s determination that an actual innocence claim asserts a violation of due process, a defendant whose conviction is the result of a guilty plea may assert an actual innocence claim under the Act. To obtain relief under such claim, a guilty-plea defendant must provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal. Because the record provides no reason to depart from the trial court's determination that defendant's new evidence was not credible, we affirm the dismissal of defendant's petition.

¶ 58       Affirmed.

¶ 59       JUSTICE MICHAEL J. BURKE, specially concurring:

¶ 60       I agree with my colleagues that defendants who plead guilty should not be completely foreclosed from bringing actual innocence claims. I further agree that defendant's petition was properly denied on the merits. I write separately because I believe that the standard for such claims should be higher than the one adopted by the majority. I would also give trial judges more leeway to dispose of such cases at the leave-to-file stage.

¶ 61       The State correctly notes that there are compelling reasons why defendants who plead guilty should not be able to bring postconviction actual innocence claims. First, by pleading guilty, a defendant relinquishes the constitutional protections intended to prevent the conviction of innocent people (see *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)), including the right to hold the State to its burden of proof beyond a reasonable doubt (*Hill v. Cowan*, 202 Ill. 2d 151, 154 (2002)). Second, the State offers significant concessions to defendants who plead guilty. The State is motivated to do so because of (1) the efficiency of forgoing a full criminal trial and (2) the certainty and finality of a guilty plea. Third, by entering into a plea agreement, the State loses its opportunity to present its full case and instead provides only a summary of the evidence sufficient to establish a factual basis for the pleas. See *People v. Barker*, 83 Ill. 2d 319, 327-28 (1980) ("the quantum of proof necessary to establish a factual basis for the plea is less than that necessary to

sustain a conviction after a full trial. [Citations.] All that is required to appear on the record is a basis from which the judge could reasonably reach the conclusion that the defendant actually committed the acts with the intent (if any) required to constitute the offense to which the defendant is pleading guilty."). When a defendant returns to court years later claiming innocence, the State is forced to muster evidence that has potentially grown stale. As the Supreme Court of Colorado noted in *People v. Schneider*, 25 P.3d 755, 761 (Colo. 2001) (*en banc*), when a defendant pleads guilty, a trial court considering a postconviction claim of actual innocence is hampered in its assessment of defendant's new evidence against what the State would have presented at the previous trial.

¶ 62    Still, because we recognized in *Washington* that the "[i]mprisonment of the innocent would *** be so conscience shocking as to trigger operation of substantive due process" (*People v. Washington*, 171 Ill. 2d 475, 487-88 (1996)) and that ignoring such claims would be fundamentally unfair as a matter of procedural due process (*id.* at 487), I would not completely foreclose guilty plea defendants from bringing postconviction claims of actual innocence. For all the policy reasons set forth above, however, the standard for doing so should be higher than that for defendants convicted after a trial. I agree with the *Schneider* court that "there must be some consequence attached to the decision to plead guilty." *Schneider*, 25 P.3d at 761.

¶ 63    The standard that the majority settles on is that a defendant who pleads guilty must provide "new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would *probably result in acquittal*." (Emphasis added.) *Supra* ¶ 49. Other states have adopted a clear and convincing evidence standard for actual innocence claims by guilty plea defendants but have worded it differently. For instance, both Iowa and Texas require that the defendant show by clear and convincing evidence that *no reasonable factfinder could find the defendant guilty*. See *Schmidt v. State*, 909 N.W.2d 778, 797 (Iowa 2018) ("the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence"); *Ex parte Tuley*, 109 S.W.3d 388, 392 (Tex. Crim. App. 2002) (standard for freestanding innocence claims, whether after trial or guilty plea is that the applicant must show "by clear and convincing

evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the new evidence"). The majority's "probably result in acquittal" language was also used by the Supreme Court of Colorado in *Schneider*. In that case, the court held that the defendant must show that the newly discovered evidence "would probably bring about a verdict of acquittal in a trial." *Schneider*, 25 P.3d at 762. However, that is not all that Colorado requires. *Schneider* also requires that a guilty plea defendant show that "the charge(s) to which the defendant pleaded guilty were actually false or unfounded." *Id.* The majority does not adopt this part of the test. If we are going to adopt the clear and convincing standard, I prefer the wording adopted by Iowa and Texas. Instead of merely requiring a defendant to show by clear and convincing evidence that the newly discovered evidence would probably result in an acquittal, I would require a showing by clear and convincing evidence that no reasonable factfinder could have convicted the defendant.

¶ 64    Although the burden should be very high for a defendant who pleaded guilty, I do not agree with the State's suggestion that the door should be left open only for those defendants who obtain forensic evidence pursuant to section 116-3 of Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2018)). Pursuant to this section, defendants who plead guilty or are convicted after a trial may move for fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, under certain circumstances. I would not limit actual innocence claims to only those defendants who obtain evidence under this statute, because it is possible that a defendant could obtain other types of reliable evidence that are just as conclusive as to innocence. For instance, assume that a defendant obtains security camera footage that was not previously known to exist and that it shows someone else committing the crime for which he pleaded guilty. It would make no sense to foreclose an actual innocence claim for such a defendant simply because this powerful, conclusive evidence of innocence was not of the type listed in section 116-3.

¶ 65    I would, however, give trial courts the ability to deny leave to file successive petitions when defendants such as the present one have failed to set forth a colorable claim of actual innocence. The majority adopts the clear and convincing standard but never sets forth what standard a petitioner must meet at each stage of the proceedings. When a postconviction petitioner raises a freestanding claim of actual

innocence after being convicted in a trial, there are three distinct stages with different standards. At the leave-to-file stage, the standard is "whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 60. At the second stage, where the State may move to dismiss the petition, the petitioner must make a substantial showing that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence. *People v. Sanders*, 2016 IL 118123 ¶¶ 24, 37. If a petitioner obtains an evidentiary hearing, then he must establish his actual innocence claim by a preponderance of the evidence. *People v. Coleman*, 2013 IL 113307, ¶ 92. The majority opinion raises the burden from preponderance of the evidence to clear and convincing evidence at the third stage but says nothing about the burden a petitioner must meet at the first two stages. If the majority means to adopt the watered-down *Robinson* standard for the leave-to-file stage, I cannot agree with that decision. As I argued in my dissent in *Robinson*, that standard has no foundation in this court's case law, and it is so vague as to be virtually meaningless. See *Robinson*, 2020 IL 123849, ¶¶ 114-18 (Burke, J., dissenting, joined by Garman and Karmeier, JJ.). The last thing we should do is further expand that decision by applying its standard to defendants who pleaded guilty, as they should be held to a much higher burden.

¶ 66    At the leave-to-file stage, I would use a standard similar to the one this court originally adopted for the leave-to-file stage when a petitioner raised a freestanding claim of actual innocence. In *People v. Edwards*, 2012 IL 111711, this court adopted a "no reasonable juror" standard for the leave-to-file stage of successive postconviction proceedings involving actual innocence claims. This court held that leave to file should be granted only "when the petitioner's supporting documentation raises the probability that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *Id.* ¶ 24 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).[3] Where it was clear that a petitioner had provided an affidavit that failed to meet this standard, courts were free to deny leave to file. See *id.* ¶¶ 39-40. The affidavit that defendant filed here

[3]In *Robinson*, 2020 IL 123849, this court simply ignored the fact that *Edwards* settled the standard for the leave-to-file stage of postconviction proceedings in which a petitioner alleges actual innocence. Overruling *Edwards sub silentio*, a majority of this court held that the standard is instead "whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal on retrial." *Id.* ¶ 60.

was not sufficient to raise a probability that petitioner could establish by clear and convincing evidence that no reasonable factfinder would have convicted him, and therefore defendant never should have been granted leave to file. Defendant pleaded guilty to armed violence. The factual basis for the plea showed that a sawed-off shotgun and a Baggie of crack cocaine were found under a bed in a room witnesses saw the defendant enter after he fled from the police. The shotgun had defendant's DNA on it, and defendant had a digital scale in his pocket. Thus, the prison affidavit defendant obtained from Callaway, who claimed that the drugs were his and that defendant was unaware of them, was not conclusive evidence of defendant's innocence and certainly could not have established by clear and convincing evidence that no reasonable factfinder would have convicted defendant in light of that evidence. Thus, defendant never should have been granted leave to file his petition.

¶ 67    The majority explains that reliability determinations are to be made at a third-stage evidentiary hearing. *Supra* ¶ 50 n.2. That said, defendant's petition could have been dismissed without the court making a reliability determination. Prior to this court's decision in *Robinson*, it was clear that a trial court could dismiss a petition when the supporting affidavits were not conclusive evidence of innocence but merely would have given the factfinder conflicting evidence to consider. See *Sanders*, 2016 IL 118123. In *Sanders*, this court acknowledged that reliability determinations can only be made at a third-stage evidentiary hearing and that at the previous stages all well-pleaded allegations not positively rebutted by the record must be taken as true. *Id.* ¶¶ 41-42. Nevertheless, this court affirmed the dismissal of the petition without an evidentiary hearing when the petitioner's affidavits would have merely added conflicting evidence for the jury to consider. *Id.* ¶¶ 52-53.

¶ 68    As I explained in my dissent in *Robinson*, the only way that *Sanders* makes sense is that if what is meant by "taking the affidavits as true" is that we assume that, had the affiants been called to testify, they would have testified under oath consistently with their affidavits. See *Robinson*, 2020 IL 123849, ¶ 110 (Burke, J., dissenting, joined by Garman and Karmeier, JJ.). If this court had been forced to assume in *Sanders* that the factfinder would have *believed* the statements in the affidavits, then this court would have had no choice but to reverse the lower courts and remand for an evidentiary hearing. *Id.* But this is not what the court did. The *Sanders* court affirmed the dismissal of the petition on the basis that the testimony

of the affiants would have merely given the jury conflicting evidence to consider. *Sanders*, 2016 IL 118123, ¶¶ 52-53. As the appellate court correctly explained in *People v. Simms*, 2020 IL App (1st) 161067, ¶ 42:[4]

> "In *Sanders*, the codefendant stated he was alone when he committed the offense and that his prior testimony identifying the petitioner as participating in the crime was not true. [*Sanders*, 2016 IL 118123,] ¶ 16. A witness who provided an affidavit in support of the successive postconviction petition averred that the codefendant acted alone at all times when she was observing the commission of part of the offense (aggravated kidnapping). *Id.* ¶ 15. If all that were required was to take the recantation and averment as true and would be believed by a reasonable juror and ask if the defendant could still be convicted, then the result of the petitioner's trial in *Sanders* would have to have been different: based on that "true" evidence Sanders did not commit aggravated kidnapping and did not participate in the murder. The only explanation for our supreme court's holding is that more is required of courts considering claims of actual innocence." *Simms*, 2020 IL App (1st) 161067, ¶ 42.

See also *People v. Jones*, 2020 IL App (1st) 171760-U, ¶ 64 ("Following *Sanders*, we must determine whether the proposed new evidence would merely add conflicting or contrary evidence to the evidence heard at trial, *even where, as in Sanders, the postconviction evidence includes statements that the defendant was not involved in the crime.*" (Emphasis added.)); *People v. Vargas*, 2020 IL App (1st) 172568-U, ¶ 43 (same).[5]

¶ 69    As I pointed out in my *Robinson* dissent, in certain circumstances this court has indeed used "taken as true" to mean that we presume that the affiant would have testified in a matter consistent with their affidavits. See *Robinson*, 2020 IL 123849, ¶ 110 (Burke, J., dissenting, joined by Garman and Karmeier, JJ.) (taking affidavits

---

[4]After deciding *Robinson*, this court denied leave to appeal in *Simms* but vacated the decision and remanded for reconsideration in light of *Robinson*. *People v. Simms*, No. 126080 (Ill. Sept. 30, 2020).

[5]I cite these two Rule 23 orders not as precedent but merely to show that multiple panels of the appellate court have read *Sanders* the same way with respect to what it means to take an affidavit as true.

as true means that " 'we will presume that had defense counsel called these witnesses, they would have testified in a manner consistent with their affidavits' " (emphasis omitted) (quoting *People v. Coleman*, 183 Ill. 2d 366, 403 (1998))). Despite being confronted with this citation, the *Robinson* majority persisted in making the incorrect statement that this court had "never held, or even suggested," that the taken-as-true requirement means that an "affiant would testify consistently with the content of the affidavit." *Id.* ¶ 59 n.2 (majority opinion). Thus, not only has the court said precisely what the *Robinson* majority said it had not, *Sanders* only makes sense if the court were using that definition of "taken as true."

¶ 70    The *Robinson* majority's wholly unconvincing explanation of how its result was consistent with *Sanders* is that *Sanders* was decided in a "significantly different procedural context" because it was a second stage case and the petitioner faces a heavier burden at the second stage. *Id.* ¶ 59. But, as I pointed out in my dissent, this is a distinction without a difference because the "taken as true" requirement applies equally at the leave-to-file and second stages. See *id.* at 106 (Burke, J., dissenting, joined by Garman and Karmeier, JJ.); see also *People v. Brown*, 2017 IL App (1st) 150132, ¶ 61 n.2, *vacated on other grounds and appeal dismissed*, No. 123252 (Ill. Jan. 24, 2019) ("Although we recognize that *Sanders* arose from a slightly different procedural posture than this case, in that it was an appeal from a second-stage dismissal of a successive postconviction petition ***, the requirement that all well-pleaded factual allegations are taken as true applies equally in this case as in *Sanders*, and it is thus helpful to our analysis of this issue.").

¶ 71    The *Robinson* majority failed to explain how raising a petitioner's burden from a "probability" to a "substantial showing" changes the meaning of what it means to take an affidavit as true. And the reason that explanation was lacking is obvious: *there is no explanation*. Nevertheless, *Robinson* left *Sanders* in place and therefore the state of Illinois law is that, at the leave-to-file stage of postconviction proceedings, a court must presume that a reasonable juror would *believe* the testimony set forth in the new affidavits (*Robinson*), but at the second stage a court does not have to presume that a reasonable juror would believe the evidence and may dismiss the petition if the new affidavits are not conclusive and would merely add conflicting evidence to what the jury heard (*Sanders*).

¶ 72    Because we have held that a defendant who pleads guilty must be held to a higher burden when bringing a postconviction claim of actual innocence, I would apply the *Edwards*/*Sanders* framework at the leave-to-file stage of such cases and limit the *Robinson* standard to actual innocence claims brought by defendants who were convicted after a trial. Here, the affidavit defendant obtained from Callaway did not raise a probability that defendant could establish by clear and convincing evidence that no reasonable fact finder would have found him guilty. The affidavit was far from conclusive and would have merely given a reasonable fact finder conflicting evidence to consider. This is not a case in which identity was an issue. Callaway claimed that defendant had no knowledge of the drugs, but a reasonable factfinder could easily conclude otherwise when the drugs were found in a room where defendant was spotted entering upon fleeing from the police, the drugs were under a bed right next to a sawed-off shotgun that had defendant's DNA on it, and defendant had a digital scale in his pocket. Given the factual basis of defendant's plea, it is difficult to imagine any evidence that defendant could muster that would establish an actual innocence claim. I agree with my colleagues that the trial court's denial of this petition was the correct decision, but I also do not believe that this petition should have advanced beyond the leave-to-file stage.