NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210559-U

NO. 4-21-0559

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 14, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| TIIYON T. BYRD, | ) | No. 10CF796 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Casey Costigan, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed, finding the trial court did not err in dismissing defendant's claim of actual innocence at the second stage of postconviction proceedings.

¶ 2   In January 2011, defendant, Tiiyon T. Byrd, pleaded guilty to five counts of armed robbery and one count of attempted armed robbery pursuant to a fully negotiated guilty plea. After accepting defendant's guilty plea, the trial court sentenced him to an aggregate term of 34 years in prison. In June 2020, defendant filed a motion for leave to file a successive postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), alleging actual innocence. The State filed a motion to dismiss defendant's successive postconviction petition, which the trial court granted.

¶ 3   Defendant appeals, contending the trial court erred by dismissing his successive postconviction petition. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5            In August 2010, a grand jury indicted defendant on four counts of armed robbery (720 ILCS 5/18-2(a)(2) (West 2008) (counts I through IV)). The armed robberies were alleged to have occurred on or about March 25, April 5, April 18, and July 7, 2010. In October 2010, a grand jury indicted defendant on one count of attempted armed robbery (720 ILCS 5/8-4, 18-2(a)(2) (West 2008) (count V)) and an additional count of armed robbery (720 ILCS 5/18-2(a)(2) (West 2008) (count VI)). The attempted armed robbery was alleged to have occurred on or about July 12, 2010, and the armed robbery was alleged to have occurred on or about July 20, 2010.

¶ 6            In January 2011, the parties indicated they had reached a fully negotiated plea agreement. As part of that agreement, defendant would plead guilty to each count and serve an aggregate term of 34 years in prison, consisting of consecutively imposed terms of 6 years' imprisonment on each armed robbery count and 4 years' imprisonment on the count of attempted armed robbery. In exchange, the State agreed to dismiss multiple outstanding charges.

¶ 7            The State offered the following factual basis in support of the plea:

               "If this case went to trial, we expect the witnesses would testify that between March and July, there were a number of armed robberies here in McLean County. Those include two at Thorton's on March 25, 2010; Walgreen's on April 5, 2010; Beningo's on April 18, 2010; Steak 'n Shake on July 7, 2010; and Clark Gas Station on July 20, 2010.

               Additionally, on July 12, 2010, an attempt was made at the Shell Gas Station. At the time, an individual later identified as the [d]efendant attempted to enter the store while masked, and at that time the doors had already been locked, and he was unable to gain entry into the station.

The officers obtained a description, and in the first four robberies just mentioned, two individuals entered the stores while masked and concealing their identities and also brandishing handguns, one a revolver and one an automatic, and in the later Clark Gas Station, it was a single individual, also concealing his identity and using a handgun.

Descriptions were obtained and videos were also obtained for those individuals. The individuals were also at one point wearing blue latex gloves. One of those gloves was located near the robbery that occurred at the Steak 'n Shake on July 7, 2010. A later DNA [(deoxyribonucleic acid)] match came back to an individual by the name of [DeAngelo] Buchanan, who turned out to be the co-defendant of the [d]efendant Tiiyon Byrd, who was later identified as the second individual in the first four robberies and the single individual in the Shell and Clark stations.

The two individuals, after being identified, a search warrant was obtained for the location where the two individuals were found. The search warrant turned up several items of identification that matched the descriptions of the robbers.

Also, the two handguns were also located. Those handguns were later sent to the [c]rime [l]ab, in addition to the glove, and the [d]efendant's DNA was found on one or both of those handguns as a mixture.

Also, after the two individuals were apprehended, Mr. Buchanan did in fact acknowledge his part in the armed robberies and did in fact identify the [d]efendant as his accomplice or the second individual in the robberies and matched the photos

of the two that were done singularly by one individual. All of the above events occurred in McLean County."

Defendant stipulated the State could produce witnesses who would testify substantially as indicated. The trial court accepted defendant's plea and sentenced defendant as provided in the plea agreement.

¶ 8        In April 2011, defendant filed an untimely *pro se* motion to withdraw his guilty plea. The trial court struck the motion, and defendant appealed. The appellate defender moved to dismiss the appeal because it did not comply with the requirements of Illinois Supreme Court Rule 604(d) (eff. July 1, 2006). We dismissed the appeal over defendant's objection.

¶ 9        On December 5, 2012, defendant filed a *pro se* postconviction petition. As amended by appointed counsel, the petition asserted, in part, his plea counsel provided ineffective assistance by failing to (1) "investigate certain matters regarding his alibi," (2) "challenge the State's evidence," and (3) "file [a] motion to withdraw [his] guilty plea." Defendant alleged he told counsel he was not guilty of the July 20, 2010, armed robbery and could show he was at BroMenn Medical Center for the birth of his child the "entire day and night" of July 20, 2010. He attached affidavits from his mother and aunt in support of this claim. The State moved to dismiss the petition as untimely and as lacking merit. The trial court granted the motion on both bases. Defendant appealed, and we affirmed, holding the petition to be untimely. *People v. Byrd*, 2018 IL App (4th) 160526, ¶ 60.

¶ 10       On June 3, 2020, defendant, through retained counsel, filed a motion for leave to file a successive postconviction petition—the petition now at issue. The proposed petition claimed defendant had newly discovered evidence to show his innocence of "at least two of the offenses to which he pled guilty." The asserted newly discovered evidence at the core of defendant's actual

innocence claim was an affidavit dated July 29, 2019, from DeAngelo Buchanan, the "Mr. Buchanan" referenced in the factual basis for defendant's guilty plea. Buchanan averred defendant could not have committed the solo offenses and he had lied when he implicated defendant in those offenses:

"I *** am [the] co defendant [*sic*] on the case [defendant] is currently incarcerated for. Aside from the four armed robberies he and I commited [*sic*] together, he is not responsible for anything else that he has been charged with or is serving time for. I DeAngelo Buchanan indeed made statements against [defendant] to the detectives who handled our case, and everything except for the four armed robberies that I confessed to were untrue. I knew that [defendant] didn't commit any other crimes because we were always together, always! Neithe[r] one of us did anything without one another. I had personal knowledge of other crimes due to people talking in the 'streets' so I figured I could save myself and gain credibility by implicating [defendant] in crimes I knew he didn't commit. Since [defendant] began serving his thirty-four year sentence[,] I haven't been able to sleep right knowing that lying on him and getting him all of this time is wrong. When all of this went down I was young, scared and lost so my only concern was my own well being. So I lied to get myself out of it not knowing it would have this kinda [*sic*] impact on both of our lives. I just want to right my wrongs and want [defendant] to come home I did my time and I feel like he did his since we commited [*sic*] the same crimes together Now that I am a free man Ive [*sic*] became a father and I feel the need to become a better man and fix this situation[.]

Detectives Jared Roth and John Atte[ ]berry made it a point that they wanted [defendant] to go down, so I tried to save myself and made false statements against [defendant]."

¶ 11     Defendant asserted Buchanan's affidavit was newly discovered because Buchanan did not retract his identification until after his release from prison. He contended the affidavit was relevant and probative of defendant's innocence because it offered direct evidence Buchanan lied when he made the identification referenced in the State's factual basis. Finally, he contended the affidavit was sufficiently conclusive because Buchanan's identification was the only link the State had between defendant and the solo offenses.

¶ 12     The trial court allowed the petition's filing and advanced it to the second stage of proceedings under the Act.

¶ 13     The State moved to dismiss the petition. First, it argued the affidavit could not be considered "newly discovered" because it was neither concealed by the State nor unavailable due to Buchanan's fifth amendment right against self-incrimination. Buchanan had, on January 4, 2010, entered a fully negotiated guilty plea to four counts of armed robbery arising from the offenses he committed with defendant. Further, it noted Buchanan was under subpoena and incarcerated locally and thus physically available to testify. Moreover, it contended Buchannan could have testified in accordance with the averments in his affidavit without implicating his fifth amendment rights against self-incrimination. Finally, Buchanan's affidavit was not the required compelling evidence of defendant's innocence. The affidavit merely "attempt[ed] to present a vague alibi defense" for the two solo offenses.

¶ 14     The trial court granted the State's motion in a written order. First, it concluded Buchanan's affidavit did not supply newly discovered evidence:

- 6 -

"[Defendant] was fully aware of DeAngelo Buchanan. DeAngelo Buchanan states in his affidavit that he and Petitioner were always together. He refers to Petitioner as his 'best friend.' In fact, Mr. Buchanan states in the affidavit that he and the Petitioner committed four of the six armed robberies together. Mr. Buchanan had already pled guilty at the time of Petitioner's plea and there is no indication he was making an assertion of Fifth Amendment Rights."

Second, it ruled the evidence was *not* "new, material non-cumulative evidence that clearly and convincingly demonstrates that a trial would result in an acquittal," and did not "amount to evidence of a conclusive character that would change the result in any subsequent proceedings."

¶ 15　　　　Defendant filed a timely notice of appeal.

¶ 16　　　　　　　　　　　　II. ANALYSIS

¶ 17　　　　In this appeal, defendant argues the trial court erred by granting the State's motion to dismiss his successive postconviction petition. Defendant asserts Buchanan's affidavit was both newly discovered evidence and sufficiently conclusive to preclude the petition's dismissal on the State's motion. First, he argues an affidavit retracting an inculpating statement is newly discovered evidence if it shows the witness had no intention of making a retraction before the defendant's trial. He contends Buchanan's affidavit shows he retracted his statement because he became remorseful after his release from prison. Second, defendant argues Buchanan's retraction of his identification of defendant as the perpetrator of the solo offenses "clearly and convincingly demonstrates that a trial would probably result in acquittal." Disputing the court's characterization of the affidavit "as 'vague at best' " as to the solo offenses, he asserts, "in the context of the evidence presented, the affidavit is clear that Buchanan's identification of [him] as the culprit of the [solo offenses] was false." In his view, the evidence in the record would not be sufficient to

support his convictions of the solo offenses absent Buchanan's identification, especially given he had previously offered an alibi for the July 20, 2010, offense.

¶ 18 In response, the State contends, because Buchanan was defendant's codefendant, defendant "clearly could have discovered [his] testimony earlier through the exercise of due diligence." It thus implies defendant must positively show Buchanan would not have retracted his inculpating statement before being called at trial. It further argues the "petition failed to make a substantial showing that the evidence clearly and convincingly demonstrates that a trial would probably result in acquittal."

¶ 19 "The Act sets forth a procedural mechanism through which a defendant can assert that 'in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both.' " *People v. Smith*, 2013 IL App (4th) 110220, ¶ 18 (quoting 725 ILCS 5/122-1(a)(1) (West 2010)). The Act provides a three-stage analytical framework for adjudicating postconviction petitions. *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010). At the first stage, the trial court must "independently review the petition, taking the allegations as true, and determine whether the petition is frivolous or is patently without merit." (Internal quotation marks omitted.) *People v. Tate*, 2012 IL 112214, ¶ 9.

¶ 20 If the postconviction petition is not dismissed at the first stage of proceedings, it advances to the second stage. *People v. Edwards*, 197 Ill. 2d 239, 245 (2001). The State may then either move to dismiss the petition or answer it. 725 ILCS 5/122-5 (West 2020). "The dismissal of a postconviction petition is warranted at the second stage of the proceedings only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Hall*, 217 Ill. 2d 324, 334 (2005).

"The dismissal of a postconviction petition without an evidentiary hearing is reviewed *de novo*. The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act. Since there are no factual issues at the dismissal stage of the proceedings, the question is essentially a legal one, which requires the reviewing court to make its own independent assessment of the allegations of the petition and supporting documentation." *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 21       Generally, a defendant is limited to filing a single petition, but that restriction may be relaxed when, *inter alia*, he or she raises a claim of actual innocence:

"The Act contemplates the filing of only a single petition. [Citations.] However, the bar against a successive filing will be relaxed in two situations. First, a defendant may raise a constitutional claim by satisfying the cause-and-prejudice test. [Citations.] Second, even without showing cause and prejudice, a defendant may assert a claim of actual innocence pursuant to *People v. Washington*, 171 Ill. 2d 475 (1996). [Citation.] *** Prior to filing a successive postconviction petition, a petitioner must obtain leave of the circuit court. [Citation.]" *People v. Jackson*, 2021 IL 124818, ¶ 27.

¶ 22       The imprisonment of an innocent person is a substantive due process violation regardless of the regularity of the process resulting in the imprisonment. *Washington*, 171 Ill. 2d at 487-88. Therefore, where an incarcerated person can offer "compelling evidence of actual innocence" that overcomes the presumption of guilt inhering in a procedurally proper conviction,

Illinois's constitutional guarantee of due process mandates a remedy. *Washington*, 171 Ill. 2d at 489.

> "The elements of a claim of actual innocence [after a trial] are that the evidence in support of the claim must be 'newly discovered'; material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial." *People v. Edwards*, 2012 IL 111711, ¶ 32.

¶ 23　　In *People v. Reed*, 2020 IL 124940, our supreme court held a defendant's guilty plea does not preclude him or her from obtaining relief under the Act if he or she states a claim of actual innocence. *Reed*, 2020 IL 124940, ¶ 45. However, such a claim "necessarily places the court in a different position than in *Washington*," which addressed only the standard for actual innocence claims made after a trial. *Reed*, 2020 IL 124940, ¶ 45. When a defendant waives trial, he or she "prevent[s] the State from admitting the entirety of its evidence against [the] defendant into the record, leaving only [the] defendant's admission of guilt and stipulation of the factual basis of the plea." *Reed*, 2020 IL 124940, ¶ 45.

¶ 24　　As the concurrence in *Reed* noted, "by entering into a plea agreement, the State loses its opportunity to present its full case and instead provides only a summary of the evidence sufficient to establish a factual basis for the pleas." *Reed*, 2020 IL 124940, ¶ 61, (Burke, J., concurring). "[T]he standard for actual innocence claims for guilty-plea defendants [thus] requires a more stringent standard than in *Washington*." *Reed*, 2020 IL 124940, ¶ 48. Therefore:

> "a successful actual innocence claim requires a defendant who pleads guilty to provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal. New means the evidence was discovered after the court accepted the plea and could not have been

discovered earlier through the exercise of due diligence. [Citation.] This is a comprehensive approach where the court must determine whether the new evidence places the evidence presented in the underlying proceedings in a different light and 'undercuts the court's confidence in the factual correctness' of the conviction. [Citation.]" *Reed*, 2020 IL 124940, ¶ 49.

¶ 25   Defendant relies on the opinion in *People v. Fields*, 2020 IL App (1st) 151735, ¶ 47, to support the proposition that Buchanan's affidavit is newly discovered evidence. We disagree. *Fields* sets a standard for newly discovered evidence Buchannan's affidavit does not meet. *Fields* expanded on the basic standard for "newly discovered evidence" as follows:

"Newly discovered evidence is evidence that could not have been obtained earlier through due diligence. [Citation] It includes testimony from a witness who 'essentially made himself [or herself] unavailable as a witness' by moving out of state [citation] or who had been made unavailable through threats or intimidation to not testify. [Citation.] For example, in *People v. Harper*, 2013 IL App (1st) 102181, ¶ 42 the witness's affidavit 'attested that his trial testimony was a lie and that police officers threatened him to obtain the testimony.' This court found, '[c]learly, due diligence could not have compelled [the witness] to testify truthfully.' [Citation.]

\*\*\*

In an actual innocence claim, it is 'the evidence in support of the claim' that 'must be "newly discovered," ' not necessarily the source. [Citation]. As a result, an affidavit from a witness may be newly discovered, even when the defense knew of the witness prior to trial. [Citation.] *If 'no amount of [due] diligence by defendant*

*could have compelled [the witness] to testify to the statements in his affidavit' at trial, then the affidavit constitutes newly discovered evidence.*" (Emphasis added.) *Fields*, 2020 IL App (1st) 151735, ¶¶ 46-48.

¶ 26 Defendant has failed to show he applied *any* diligence to getting Buchanan to retract the statement implicating him in the solo offenses. The State properly points out, *if* defendant did not commit the solo offenses, he would have necessarily immediately known Buchanan's statements implicating him in the solo offenses were false—they were either lies or the result of a mistaken identification. An innocent defendant, knowing he could not be the person in the photographs, presumably could establish either the photographs lacked enough detail for anyone to make a reliable identification or they had enough detail to suggest a different perpetrator. Either possibility could have been used to encourage Buchanan to retract the identification. Tellingly, defendant does not suggest he attempted to use the photographs to establish his innocence, either by challenging Buchanan or by using the photographs directly. That inaction is not consistent with the diligence one would expect of a person who knew the identification was false.

¶ 27 In his reply brief, defendant argues, because Buchanan averred he was retracting his inculpating statement only because he had started to feel guilty about his lies after his release from prison, his affidavit is necessarily newly discovered evidence. We disagree. Buchanan's affidavit tells us when he *wanted* to make the retraction, but not how Buchanan would have reacted to an attempt by defendant prior to his guilty plea to use the posited flaws in the evidence to encourage Buchanan to retract the inculpating statement. But the telling point is that defendant never pushed for such a confrontation. Defendant's inaction made no sense from an innocent person's perspective.

¶ 28 Because the affidavit was not newly discovered evidence, we need not address whether it was "of such conclusive character that it would probably change the result on retrial" (*Edwards*, 2012 IL 111711, ¶ 32). To be sure, "the conclusiveness of the new evidence is the most important element of an actual innocence claim." *Sanders*, 2016 IL 118123, ¶ 47. But the requirement the evidence be newly discovered is not a mere procedural hoop through which an actual innocence claimant must jump. We reiterate that an innocent defendant is necessarily aware of the failures of the State's evidence. No reasonable innocent defendant will allow him or herself to be convicted on bad evidence without making due effort to challenge it. We recognize innocent defendants sometimes have taken years to accumulate exonerating evidence. However, the existence of hurdles to exoneration is not an explanation for a defendant's failure to challenge bad evidence from the start. Defendant did not challenge Buchanan's inculpating evidence before he pled guilty, so Buchanan's affidavit is not newly discovered evidence.

¶ 29                                  III. CONCLUSION

¶ 30      For the reasons stated, we affirm the trial court's second-stage dismissal of defendant's petition under the Act.

¶ 31      Affirmed.