2021 IL App (1st) 182438-U

No. 1-18-2438

September 14, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 2496 |
| | ) | |
| LEROY SULLIVAN, | ) | Honorable |
| | ) | Marc W. Martin, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's denial of postconviction relief following an evidentiary hearing
was not against the manifest weight of the evidence.

¶ 2    Defendant Leroy Sullivan appeals from the circuit court's denial of relief under the Post-

Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), following an evidentiary

hearing. On appeal, defendant contends that the circuit court erred when his guilty plea was not

voluntary and knowing due to plea counsel's erroneous advice regarding the amount of good time credit he would receive on his 25-year sentence for attempt murder of a peace officer. We affirm.

¶ 3     Following his January 6, 2010 arrest, defendant was charged by indictment with attempt murder of a peace officer, aggravated discharge of a firearm, unlawful use of a weapon by a felon, and two counts each of home invasion and aggravated unlawful restraint.

¶ 4     On February 23, 2011, defendant entered guilty pleas to attempt first degree murder of a peace officer (720 ILCS 5/8-4(a) (West 2008); 720 ILCS 5/9-1(a)(1) (West 2008)) and home invasion (720 ILCS 5/12-11(a)(3) (West 2008)), in exchange for two concurrent 25-year prison terms.

¶ 5     At the plea hearing, the trial court admonished defendant that he was pleading guilty to attempt first degree murder of a peace officer, a Class X felony with a sentencing range of 20 to 80 years in prison, and to home invasion, a Class X felony with a sentencing range of 21 to 45 years in prison. The court further stated that due to his criminal background, defendant was eligible for an extended-term sentence.

¶ 6     The State presented the factual basis. On January 6, 2010, defendant, Kendall Moore, and Lorenzo Vaughen went to the Schaumburg home of Moore's marijuana dealer to rob him. Defendant and Vaughen entered the house with duct tape, extension cords, and a firearm. They tied up a man and woman and searched the house for marijuana and money. The female victim called 911, and police officers, including Officer Larry Marks, responded. Defendant and Vaughen fled. During the subsequent pursuit, defendant shot at Marks. After defendant was arrested, he was identified by the victims and Marks, and gave an inculpatory statement. The court accepted the

factual basis and sentenced defendant to two concurrent 25-year prison terms. Defendant did not move to withdraw his plea or file a direct appeal.

¶ 7 In August 2013, defendant filed *pro se* motions for transcripts and appointment of counsel, which stated that "17 years" remained on his sentence and that he was "addressing" his "issues" under the Act, and attached an affidavit wherein he averred that police officers involved in his case were corrupt. The court denied the motion and defendant appealed. On June 24, 2014, the appeal was dismissed for want of prosecution. See *People v. Sullivan*, No 1-13-3826 (2014) (dispositional order).

¶ 8 On May 22, 2014, defendant filed a *pro se* petition for relief under the Act alleging, *inter alia*, that he was "falsely" arrested by Schaumburg police officer Terrence O'Brien, subjected to "selective and vindictive" prosecution, and denied the effective assistance of counsel because plea counsel "misinformed" him about the amount of time he must serve before parole. Specifically, the petition alleged that plea counsel failed to inform defendant of the State's offer of 25 years in prison with day-for-day credit in exchange for a plea of guilty to home invasion. The petition also noted that retained counsel withdrew from representing defendant four days before the "filing" of the petition. Attached to the petition were, in pertinent part, the affidavits of defendant and his mother, Sherri Sullivan.[1]

¶ 9 Defendant averred that after he and Vaughen purchased marijuana at a house in Schaumburg, he saw police officers at the door and ran away. He was arrested, transported to a police station, and given a gunshot residue (GSR) test that did not test positive. Defendant was

---

[1] Because defendant and Sherri Sullivan share the same last name, we refer to Sherri by her first name.

confused because "none of us" had a firearm. Then, he was taken to a garage, told that he fired at the police, and punched and kicked by officers when he "denied the allegation." Defendant denied making a statement.

¶ 10     Defendant asserted that he pled guilty in exchange for a sentence of 25 years in prison to be served at 50%, but that the agreement was changed after he "took it" such that he was required to serve 85% of his sentence. Defendant finally averred that he did not have a "fair chance" and was "blatantly set up." According to defendant, the arresting officer in his case, O'Brien, had been charged with robbing drug dealers and selling drugs, which "exposed" the Schaumburg Police Department's corruption.

¶ 11     Sherri averred that plea counsel told her that if defendant entered a guilty plea, the court agreed to sentence him to 25 years in prison and he would serve 50% of that sentence. However, if defendant had a jury trial the "deal [was] off the table." Sherri advised defendant to go to trial. After plea counsel said Rolling Meadows jurors were elderly and prejudiced and defendant would serve 25 years in prison if convicted, defendant "immediately" entered a guilty plea.

¶ 12     The petition was docketed and postconviction counsel appointed. On August 14, 2015, postconviction counsel filed an amended supplemental petition and certificate pursuant to Supreme Court Rule 651(c) (eff. Feb. 6, 2013).

¶ 13     The amended supplemental petition alleged that defendant was deprived of his constitutional rights when O'Brien, who arrested him, was later convicted of "various" federal felonies, defendant was subjected to "selective prosecution" when he was treated disparately from his co-offenders, and plea counsel misinformed him as to how much of his prison sentence he must serve before becoming eligible for parole. Specifically, the amended supplemental petition alleged

that defendant pled guilty because plea counsel stated he would be eligible for day-for-day credit, and that he would not have entered a guilty plea had he known he was ineligible for day-for-day credit. The State filed a motion to dismiss, and on July 22, 2016, the circuit court heard argument on the motion.

¶ 14    In partially granting the motion to dismiss, the court noted that the *pro se* petition was untimely, but that defendant was not culpably negligent for filing the petition 81 days late when the record revealed that defendant originally retained a private attorney whose "initial solicitation" to file a postconviction petition and lawsuit against the police was within the statute of limitations, but counsel later withdrew from representation. The court dismissed defendant's claim for vindictive and selective prosecution and set the claims regarding O'Brien and the ineffective assistance of plea counsel for an evidentiary hearing.

¶ 15    Postconviction counsel then filed a freestanding postconviction petition raising a claim of actual innocence based upon the negative GSR test, arguing that this result undermined the voluntary nature of defendant's plea and corroborated his claim that O'Brien arrested innocent people.

¶ 16    The matter proceeded to an evidentiary hearing on August 4, 2017. At the hearing, postconviction counsel characterized the petition raising a free-standing claim of actual innocence as a "successive" petition and the court agreed to consider the claim.

¶ 17    Defendant testified that he was arrested on January 6, 2010, by Schaumburg police officers and charged with attempt murder of a police officer. Assistant public defender Kelly Christl was appointed to represent him. Prior to the entry of his guilty plea, Christl told him that no residue was recovered from the GSR test performed on him. However, she did not tell him that Vaughen's

GSR test was positive, and defendant would not have entered a guilty plea had he known this. Although defendant and plea counsel discussed the police reports, she did not tell him a police officer stated that defendant admitted to discharging a firearm and he did not know the charges against Vaughen. After defendant entered a guilty plea, he learned that O'Brien, the arresting officer in his case, was arrested for misconduct. Had defendant known that O'Brien was engaged in misconduct, he would not have pled guilty.

¶ 18     When counsel explained the terms of the State's offer, she stated that "the Judge" would "give" defendant 80 years if he were found guilty after trial, but that "copping out" to 25 years at 50% was defendant's "best option." Although defendant told counsel he did not have a firearm, she stated that based on his background he would be charged with attempt murder "anyway." Defendant explained that in 1996 he was arrested for attempt murder after "fleeing a party with some guys that got run over by [his] car," went to trial, and was sentenced to 18 years in prison to be served at "50 percent." He had no reason to doubt Christl when she said he would be eligible for day-for-day credit. Defendant would not have entered a guilty plea had he known he would serve 85% of his sentence.

¶ 19     During cross-examination, defendant reiterated that Christl never told him the police said he made a statement about a firearm. Although they discussed the charges against him, Christl "never *** went through" the police reports. He denied speaking to the police or an assistant State's Attorney about the events of January 6, 2010. When defendant asked about the evidence against him, Christl stated she would secure a plea because the trial court wanted to sentence him to 80 years, as this was a "high profile" case where a firearm was discharged at a police officer.

¶ 20      Defendant acknowledged he was with Vaughen and Moore on January 6, 2010, but denied telling the police that he accompanied Moore to "talk" to someone who "shorted" Moore on marijuana. He identified a five-page statement dated January 8, 2010, which bore his signature, but denied making the statement. Defendant denied stating that he and the co-offenders went to a "white guy's" house in Schaumburg to take marijuana after Moore was not given the "full" amount, that Vaughen had a firearm, and that Vaughen instructed defendant to tie up a woman and asked the man for the location of the "weed." Defendant further denied stating that when the doorbell rang, he opened the door, saw two police officers, and closed the door. He finally denied stating that he located the firearm on a bathroom sink, grabbed it, and then ran outside where he stumbled and caused the firearm to discharge. Counsel never told defendant about this statement or that witnesses identified him in a lineup.

¶ 21      During redirect, defendant testified that when officers questioned him, he requested an attorney. He was then taken to a garage where he was hit and kicked by police officers including O'Brien. Defendant was scared and would have signed "anything." He told Christl that he never discharged a firearm. Defendant had no reason to doubt counsel's statement that he would receive day-for-day credit. During recross, defendant testified he was unaware that Christl filed a motion to suppress statements alleging his statement was involuntary and that he was beaten "about the head and body."

¶ 22      Sherri testified that she spoke with Christl about defendant's case "all the time." However, they did not discuss a motion to suppress statements. Christl told her it would be in defendant's best interest to enter a guilty plea, and that the trial court would offer defendant a 25-year sentence to be served at 50%. On February 23, 2011, Christl told Sherri that if defendant rejected the offer

it would be "off the table," and if he were found guilty after trial, he would serve 85% of his sentence. Sullivan was "upset" because she advised defendant to go to trial.

¶ 23    During cross-examination, Sherri acknowledged that Christl was not her attorney and did not discuss "a lot" with her. She was not present for conversations between Christl and defendant, learned of the offer on the day that defendant entered his plea, and did not speak to him that day. Sherri was unaware that defendant made an inculpatory statement and was identified by multiple witnesses.

¶ 24    Fallon Wells, defendant's former fiancée, testified that she accompanied Sherri to every court date and was present at the plea hearing. After defendant pled guilty, Christl told them that defendant would receive day-for-day credit on his sentence and would have received a longer sentence due to his criminal background had he gone to trial.

¶ 25    During cross-examination, Wells acknowledged not knowing that defendant had a conference with the court prior to entering his guilty plea or that the State made an offer. She was not present for conversations between defendant and Christl. Wells told defendant not to plead guilty, but Christl advised "otherwise."

¶ 26    O'Brien testified that he previously entered guilty pleas to armed violence with a weapon and "manual delivery of a controlled substance," and was in prison at the time of the hearing.[2] In January 2010, O'Brien was a Schaumburg police officer. He did not remember arresting defendant. After reviewing an arrest report he authored, O'Brien testified that when he arrested defendant, defendant stated, "he was with his cousin Kendall at some white boy's house to buy some kush."

---

[2] Although the report of proceedings refers to O'Brien's conviction as "manual delivery of a controlled substance," the conviction at issue was likely manufacture or delivery of a controlled substance.

He did not recall interrogating defendant or being in a garage with defendant. He denied hitting defendant or using intimidation and physical force against defendant.

¶ 27    During cross-examination, O'Brien testified that defendant was observed in a snowbank and then taken into custody. He had no contact with defendant at the police station.

¶ 28    The defense then called Kelly Christl, who represented defendant in the plea proceedings. The circuit court asked the State if it objected to defendant "calling [the State's] witness," and the State replied that it did object.

¶ 29    Christl testified that she worked for the Office of the Cook County Public Defender between 2000 and 2014, and reached the "highest grade *** achieve[able] as a line attorney." She represented defendant after private counsel withdrew. Before appearing at the evidentiary hearing, Christl reviewed the postconviction filings and attached exhibits, and the transcript from the plea hearing. She also reached out to her former office several times asking if her files and notes could be located, but she never heard back. She did not have any materials outside of the "official" record.

¶ 30    Prior to the date of the plea, Christl spoke to defendant and reviewed his criminal history. She knew he had a prior Class X conviction but did not remember the offense, whether defendant had other convictions, or if he had previously received day-for-day sentence credit. Christl did not state on the record at the plea hearing that defendant would receive day-for-day credit on his sentence.

¶ 31    During cross-examination, Christl testified that she had concerns about violating attorney-client privilege and would feel more comfortable if the court ordered her to answer questions. The court then directed Christl to answer questions regarding her representation of defendant. Christl

testified that she discussed the police reports, defendant's inculpatory statement, and witness identifications with defendant. After reviewing defendant's statement with him, she filed a motion to suppress statements. Christl discussed the charges, including attempt murder of a peace officer, with defendant. She explained to defendant that the applicable sentencing range for attempt murder of a peace officer was 20 to 80 years in prison to be served at 85%. She also discussed the applicable sentencing range for home invasion with a firearm, and that any sentence would be eligible for day-for-day credit. She told defendant that his prior criminal record made him eligible for an extended-term sentence.

¶ 32    Christl's objective when entering plea negotiations was the dismissal of the attempt murder of a peace officer charge and a guilty plea to home invasion. The motion to suppress statements alleged, based on information received from defendant, that he was not informed that he had the right to remain silent and was beaten by police officers. Although Christl did not have an independent recollection of a conversation with defendant regarding the warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), she would not otherwise have raised that claim. Because defendant entered a guilty plea there was no hearing on the motion. Prior to the plea, Christl filed a motion for severance because the co-offenders gave statements implicating defendant. Christl denied telling Sherri that defendant would serve his sentence for attempt murder of a peace officer at 50%, and telling defendant he would receive the same sentence as the co-offenders.

¶ 33    During redirect, Christl testified she believed defendant had a "triable case" on the attempt murder of a peace officer charge based on "issues" with defendant's intent and how the firearm was discharged. However, she was concerned about defendant's exposure on the other charges at trial. She remembered receiving the GSR reports which excluded defendant and telling defendant

that a co-offender tested positive for GSR. Christl did not remember that defendant had three prior attempt murder convictions and had received day-for-day credit on those sentences. She was "sure" she discussed defendant's background with him. She did not state on the record the percentage of his sentence that defendant would have to serve. Christl remembered speaking to Sherri several times and stating the objective was the dismissal of the attempt murder of a peace officer charge, but did not remember discussing the State's offer with her or speaking to her the day of the plea.

¶ 34    During recross, Christl testified that she explained to defendant that it was his choice to plead guilty or not. Although she advised defendant about his options, she did not tell him to accept the plea. She did not remember if defendant asked questions about the plea, but if she had any concerns about his ability to understand the plea, she would not have proceeded. Although defendant was not present at the Supreme Court Rule 402 (eff. July 1, 1997) conference, following the conference she relayed the offer of 25 years on the charge of attempt murder of a peace officer to be served at 85%. Defendant asked for time to consider the offer and the case was continued.

¶ 35    On re-redirect, Christl testified that she and defendant discussed that it was important to obtain a plea in which the charge of attempt murder of a peace office was dismissed so that he could plead guilty to a "50% charge." She planned to rely on the facts that no GSR was found on defendant and that defendant said the firearm discharged when he slipped and fell.

¶ 36    The State then presented the testimony of Schaumburg police sergeant Patrick Quane, who testified that on January 6, 2010, he was a detective and during his investigation learned that defendant was identified by an officer as the shooter. He met defendant at a police station. Quane took defendant to the garage so that defendant could smoke, but denied kicking or striking

defendant. Quane was present when defendant gave a statement and at no time did defendant say that a police officer struck or kicked him. During cross-examination, Quane acknowledged not knowing what happened to defendant prior to being assigned to the case, but asserted he would have observed injuries had defendant been beaten.

¶ 37     At the close of testimony, the court and parties agreed to treat the petition raising a claim of actual innocence as an amendment to the amended supplemental petition. The court then heard argument.

¶ 38     On November 9, 2018, the circuit court denied defendant postconviction relief. In pertinent part, the court noted that defendant acknowledged in motions filed in 2013 that 17 years remained on his sentence, and at that time he did not raise "any discrepancy in good time" credit. Moreover, defendant, Sherri, and Wells testified that counsel stated defendant would receive day-for-day credit on his sentence, but Christl "recollected" telling defendant that a sentence for the offense of attempt first degree murder of a peace officer would be served at 85%. The court found Christl's testimony credible and further noted she had "no motivation not to advise" defendant about good time credit. The court agreed that it might have been better practice to make a statement about good time credit on the record at the plea hearing, but noted that no authority mandated such a statement. The court further stated that the applicable sentencing range for attempt murder of a peace officer was 20 to 80 years in prison, defendant's criminal background subjected him to an extended-term sentence, and counsel was concerned that defendant could be sentenced to 80 years in prison following a guilty finding at trial. The court concluded that defendant had not proven by a preponderance of the evidence that the decision to reject the plea would have been "rational."

¶ 39    On appeal, defendant contends that the circuit court erred in denying him postconviction relief when he established that his plea was unknowing and involuntary because it was based upon plea counsel's erroneous advice that he would only have to serve 50% of his sentence.

¶ 40    The Act provides a three-stage process for defendants who allege a substantial deprivation of their constitutional rights. *People v. Cotto*, 2016 IL 119006, ¶ 26. When a petition advances to the third stage of postconviction proceedings, the circuit court conducts an evidentiary hearing (*People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006)), where "the burden is on the defendant to make a substantial showing of a deprivation of constitutional rights" (*People v Coleman*, 206 Ill. 2d 261, 277 (2002)). The circuit court, as the finder of fact at the hearing, makes credibility determinations and weighs the evidence. *People v. Reed*, 2020 IL 124940, ¶ 51.

¶ 41    We review the circuit court's ruling following a third stage evidentiary hearing for manifest error. *Id.* Manifest error is an error that is "clearly evident, plain, and indisputable." (Internal quotation marks and citations omitted.) *Id.* However, with claims of ineffective assistance of counsel, we apply "a bifurcated standard of review, wherein we defer to the *** court's findings of fact unless they are against the manifest weight of the evidence but make a *de novo* assessment of the ultimate legal issue of whether counsel's actions support an ineffective assistance claim." *People v. Nowicki*, 385 Ill. App. 3d 53, 81 (2008).

¶ 42    A claim of ineffective assistance of counsel presented in a postconviction petition is judged under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced him. *Id*. at 687-88. To demonstrate deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To demonstrate

prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant's failure to establish either prong is fatal to his claim. *People v. Easley*, 192 Ill. 2d 307, 318 (2000).

¶ 43 The constitutional right to the effective assistance of counsel extends to plea negotiations. *Missouri v. Frye*, 566 U.S. 134, 144 (2012); *People v. La Pointe*, 2015 IL App (2d) 130451, ¶ 71. To establish prejudice in the plea context a defendant must show that " 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Claims related to a defendant's "understanding of the consequences of pleading guilty," as opposed to matters of trial strategy, do not require a showing that he would have been "better off going to trial" by raising a claim of actual innocence or a viable defense. (Internal quotation marks omitted.) *Id.* ¶ 34 (citing *Lee v. United States*, 582 U.S. at __, 137 S. Ct. 1958, 1965-66 (2017)). Instead, a defendant need only show that the decision to reject a plea and go to trial would be " 'rational under the circumstances.' " *Lee*, 582 U.S. at __, 137 S. Ct. at 1968 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

¶ 44 In the case at bar, whether defendant made a substantial showing of the deficient performance and prejudice components of the ineffective assistance test ultimately depended on a credibility contest between the testimony of defendant and his witnesses, and Christl.

¶ 45 During the hearing, defendant testified that Christl told him that he would likely be sentenced to 80 years if found guilty after trial and that his "best option" was "copping out" to 25 years at 50%. He further testified that he had no reason to doubt Christl when she said he would

be eligible for day-for-day credit, and that he would not have entered a guilty plea had he known he would be required to serve 85% of his sentence. While defendant's mother and former fiancée testified consistently with defendant that Christl stated that defendant would serve his sentence at 50%, they both acknowledged not being present for conversations between defendant and Christl.

¶ 46    Christl, on the other hand, testified that she discussed the charges with defendant and explained to him that the applicable sentencing range for attempt murder of a peace officer was between 20 and 80 years in prison to be served at 85%, but that the sentence for home invasion would be eligible for day-for-day credit. Her goal in plea negotiations, which she discussed with defendant, was the dismissal of the attempt murder of a peace officer charge and a guilty plea to home invasion, so that defendant could plead guilty to a "50% charge." She further testified that after the Rule 402 conference, she told defendant about the State's offer and the case was continued so that he could consider it. Although she discussed the options with defendant, she did not tell him to plead guilty. Christl also noted that although she believed defendant had a "triable case" on the attempt murder of a peace officer charge, she was concerned about defendant's exposure on the other charges at trial and that defendant's criminal background made him eligible for an extended-term sentence.

¶ 47    These competing versions of events—that Christl entered plea negotiations hoping to obtain a guilty plea to a charge that was eligible for day-for-day credit but was unsuccessful, as opposed to defendant's assertion that Christl told him he would be eligible for day-for-day credit and that he would have rejected the plea had he known he was required to serve 85% of his sentence—presented the circuit court with a credibility determination. Ultimately, the court credited Christl's testimony that she told defendant she would try to negotiate a plea where he

would plead guilty to an offense that was eligible for day-for-day sentencing credit but was ultimately unsuccessful, and relayed to defendant that the State's offer was 25 years on attempt murder of a peace officer to be served at 85%. It was for the circuit court, as finder of fact at the hearing, to make credibility determinations and weigh the evidence. *Reed*, 2020 IL 124940, ¶ 51. After reviewing the testimony on both sides of this credibility determination, we find that the court's finding was not manifestly erroneous, as the opposite conclusion is not clearly apparent. See *People v. Coleman*, 2013 IL 113307, ¶ 98 ("a decision is manifestly erroneous when the opposite conclusion is clearly evident").

¶ 48 Even if this court were to agree with defendant that counsel's performance was somehow deficient, we are unpersuaded that rejecting the plea and proceeding to trial would have been the rational choice in this case. See *Padilla*, 559 U.S. at 372 (to establish prejudice, a defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

¶ 49 Here, defendant was charged with two Class X offenses. Generally, the sentencing range for a Class X felony is 6 to 30 years in prison and an extended-term sentence is 30 to 80 years in prison. See 730 ILCS 5/5-4.5-25(a) (West 2008). As charged in this case, however, attempt murder of a peace officer had an applicable sentencing range of 20 to 80 years in prison (720 ILCS 5/8-4(c)(1)(A) (West 2008); 720 ILCS 5/9-1(a)(1) (West 2008)) and was subject to a 20-year sentencing enhancement because a firearm was discharged during the commission of the offense (720 ILCS 5/8-4(c)(1)(C) (West 2008)). Home invasion, as charged in this case, had an applicable sentencing range of 21 to 75 years in prison. 720 ILCS 5/12-11(a)(3), (c) (West 2008).

¶ 50    While Christl testified that she thought defendant had a good case regarding the charge of attempt murder of a peace officer because of how the firearm was discharged, and had filed motions to suppress statements and for severance, the fact remained that defendant was identified by multiple witnesses as one of the offenders, made an inculpatory statement, and had a criminal history that included a prior Class X conviction. Facing up to 80 years in prison for the offense of attempt first degree murder of a peace officer plus the 20-year sentencing enhancement for discharging a firearm during the offense to be served at 85%, it is difficult to believe that a rational defendant would reject a 25-year plea offer that excluded the enhancement, thereby securing 15 fewer years in prison than the statutory minimum applicable sentence for that offense with the enhancement included. *Padilla*, 559 U.S. at 372. Because defendant has not shown a reasonable probability that he would have rejected the plea and proceeded to trial absent counsel's allegedly deficient advice concerning how much of his sentence he must serve, he cannot demonstrate prejudice, and his ineffective assistance claim must fail. See *Easley*, 192 Ill. 2d at 318 (the failure to establish either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim). Accordingly, the circuit court did not err in denying defendant postconviction relief.

¶ 51    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 52    Affirmed.