NOTICE

Decision filed 03/29/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210219-U

NO. 5-21-0219

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-CF-1428 |
| | ) | |
| TRACEY VICKERS, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court properly granted the State's motion to dismiss the petitioner's second-stage postconviction petition where the defendant failed to make a substantial showing that he was actually innocent and that he was deprived of effective assistance of counsel.

¶ 2     The defendant, Tracey Vickers, filed a postconviction petition claiming a violation of his constitutional right to effective assistance of counsel as well as his constitutional right to due process and equal protection. The circuit court dismissed the defendant's petition at the second stage and found that the defendant's petition failed to show that he suffered a substantial violation of his constitutional rights as required by section 122-2.1(b)

1

of the Code of Civil Procedure (725 ILCS 5/122-2.1(b) (West 2020)). The defendant appeals the dismissal of his postconviction petition. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On October 20, 2014, the defendant was in an altercation with Tobias Gross during which the defendant choked Tobias until he went limp on the ground. When the police arrived, Tobias was barely breathing. Tobias was transported to the hospital where he was pronounced dead from asphyxiation.

¶ 5    The defendant was charged in a two-count criminal indictment with the offenses of first degree murder in violation of section 9-1(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/9-1(a)(1) (West 2014)) and first degree murder in violation of section 9-1(a)(3) of the Code (720 ILCS 5/9-1(a)(3) (West 2014)). The first count alleged that the defendant intentionally killed Tobias Gross by striking him in the head and body and choking him around the neck/throat. The second count alleged that the defendant committed felony murder when he struck Tobias about the head and choked him during the attempted commission of a robbery.

¶ 6    On July 23, 2015, the defendant filed a motion for leave to dismiss appointed counsel claiming that counsel failed to provide competent and effective representation. Defense counsel subsequently filed a motion to withdraw due to prior representation of a disclosed witness. The circuit court granted the motion to withdraw, and new counsel was appointed for the defendant.

¶ 7    On July 27, 2015, the State filed a motion *in limine* and requested that the defense be barred from making any reference to Tobias having been diagnosed with schizophrenia.

The State argued that Tobias's mental health diagnosis was not relevant and allowing the jury to hear evidence of a mental illness would be overly prejudicial to the State. The motion was never argued or ruled upon.

¶ 8     The defendant filed a letter on October 12, 2015, informing the circuit court that his new attorney had not reviewed DVDs or shared that information with the defendant. He argued that he was not receiving effective assistance of counsel because of his attorney's lack of interest and poor communication. The trial date was continued, and new counsel was appointed.

¶ 9                              A. Guilty Plea

¶ 10    Prior to the plea hearing held on July 22, 2016, the State filed a new criminal information and charged the defendant with the offense of second degree murder in violation of section 9-1(a)(2) of the Code (720 ILCS 5/9-1(a)(2) (West 2016)). The State asserted in the criminal information that the defendant knowingly killed Tobias and at the time of the killing the defendant believed that he would be justified or exonerated of the killing, but his belief was unreasonable.

¶ 11    During the defendant's guilty plea and sentencing hearing, the State informed the circuit court that the defendant was originally charged with two counts of first degree murder which would be punishable by 20 to 60 years in the Illinois Department of Corrections followed by 3 years of supervised release. Truth in sentencing would apply to those offenses and the defendant would be required to serve 100% of his sentence.

¶ 12    The State also informed the circuit court that second degree murder was punishable by 4 to 20 years in the Illinois Department of Corrections or probation of up to 48 months

3

followed by 2 years of mandatory supervised release. Truth in sentencing would not apply to the amended offense of second degree murder. The State further advised the circuit court that the defendant had a criminal history with at least two prior Class 2 or higher offenses which would subject him to mandatory Class X sentencing for second degree murder. The defendant, therefore, faced a sentencing range of 6 to 30 years followed by 3 years of mandatory supervised release and truth in sentencing would not apply.

¶ 13 The defendant intended to plead guilty to the new count of second degree murder. The parties jointly recommended a sentence of 30 years in the Illinois Department of Corrections followed by 3 years of mandatory supervised release. In exchange for the guilty plea, the State would dismiss the original indictment of first degree murder.

¶ 14 The circuit court admonished the defendant, and the following statements were made:

> "THE COURT: Okay. Now, this new charge has incorporated within it the concept of a self[-]defense. And I don't know—I haven't heard the factual basis yet, but there must have been something that is evident in the discovery or something that's gone on subsequent to the original charge being filed that suggests to the attorneys and that suggested to the State that you could make some sort of claim of self[-]defense. I want to make sure you understand that if you plead guilty you're giving up your right to present the defense of self[-]defense to a jury.
> You understand that?
> THE DEFENDANT: Yes.
> THE COURT: Because the ultimate outcome of a successful presentation of a self[-]defense defense is that you would be found not guilty, which means no prison time.
> You understand that?
> THE DEFENDANT: Yeah, I understand.
> * * *
> THE COURT: Okay. Are you comfortable with proceeding at this time?
> THE DEFENDANT: Yeah."

¶ 15    The State presented a factual basis which included that a witness would testify that the defendant came from behind Tobias and began beating him. The defendant choked Tobias until Tobias went limp and yelled that the victim owed the defendant money. The witness had additionally reported that the defendant went through Tobias's pockets, and it appeared that the defendant had taken something. The factual basis additionally included admissions that the defendant made after his arrest. The defendant had claimed that he confronted Tobias because Tobias owed the defendant money and that Tobias had tried to grab the defendant and punch him first. The defendant, however, eventually admitted that he swung at Tobias first. The defendant admitted to holding Tobias around the neck until he was on the ground and that he had looked through Tobias's wallet for money.

¶ 16    The State believed it had sufficient evidence to prove the offense of first degree murder, but the defendant could present evidence to mitigate that offense to second degree murder. The State stated that "at the time of the killing the defendant believed the circumstances to be such that if they existed would justify or exonerate the killing in that he would be justified in the use of deadly force in defense of self, but that such defense—such belief was unreasonable." The defendant stipulated that the State would be able to prove the factual basis beyond a reasonable doubt.

¶ 17    The circuit court questioned the defendant about giving up the right to trial and pleading guilty after the factual basis was presented. The court stated:

> "THE COURT: You're giving up your right to present a set of facts different from what [the State] would prove through her witnesses.

5

THE DEFENDANT: Yeah, I don't agree. I didn't—I didn't come up from behind him. Nor did I rob him, but I'm going to plead guilty. I mean I don't want to go to trial.

THE COURT: Why do you—explain to me why you think it's in your best interest to pursue a plea of guilty when you have the possibility of presenting a defense.

THE DEFENDANT: Because I think that it's in my best defense to plead guilty because the friend—the friends that I have that live on that street were still sitting in the house. So there's—the guy that gave the statement. Devereaux Lang, he's lying, you know. He's the same guy that threatened to kill him. I came outside to see about him. I didn't come outside to kill him. I came outside to make sure he was all right. And he head-butted me and broke my tooth and we started fighting. I had no intentions of killing him. I had no intentions—I didn't know—if I would have known that he—I ran because the police were coming and I didn't want to go to jail for fighting is the only reason I left the scene. Other than that, I would have been giving him CPR myself. We were friends. We been friends for four years. There's no amount of money that he could owe me that I—there's no amount of money that he could owe me that I would take his life.

* * *

THE COURT: Well, you understand that if you plead guilty to this second degree murder charge, you're giving up the right to challenge the credibility of this witness.

THE DEFENDANT: Yes, I am. I'm tired.

THE COURT: And you still think it's in your best interest?

THE DEFENDANT: Yes.

THE COURT: All right. Very well. [Defendant], how do you wish to plead to the charge of second degree murder, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: I accept your plea. I find there's a factual basis for the plea."

¶ 18 The defendant was sentenced for the offense of second degree murder to 30 years' imprisonment and 3 years of mandatory supervised release. The defendant did not file a motion to withdraw his guilty plea, nor did he file an appeal.

¶ 19                          B. Postconviction Proceedings

¶ 20 The defendant filed a *pro se* postconviction petition on June 26, 2018, where he alleged ineffective assistance of counsel. The circuit court reviewed the *pro se* petition and

6

found that the defendant had alleged the gist of a constitutional claim in his postconviction petition. His claim advanced to the second stage and postconviction counsel was appointed.

¶ 21 An amended postconviction petition was filed on July 1, 2019. Postconviction counsel subsequently filed a motion for the appointment of a private investigator to locate an eyewitness. The defendant claimed that the witness would testify that the defendant acted in self-defense. The circuit court granted the motion.

¶ 22 On September 17, 2019, postconviction counsel filed a revised amended postconviction petition. The defendant claimed that he was denied effective assistance of trial counsel and the outcome of the proceedings would have been different with effective assistance. The defendant had informed his trial counsel that he acted in self-defense but felt like he had no choice but to plead guilty. He had no confidence in his trial counsel to present a defense or cross-examine the State's witness. Trial counsel failed to discuss discovery materials that demonstrated Tobias suffered from schizophrenia and investigate the defendant's self-defense claim.

¶ 23 The defendant claimed that trial counsel failed to obtain a police report that would have established that the defendant was friends with Tobias. After the defendant pleaded guilty, he learned that Tobias's mother, Gearline Gross, had provided a statement to the police that Tobias suffered from schizophrenia, which caused him to be attracted to "the dark side." She additionally had informed the police that Tobias had threatened to kill his parents, he had tried to kill himself, he heard voices, and he had a split personality. Trial counsel, however, failed to inform the defendant of Gearline's statement.

7

¶ 24    The defendant asserted that the toxicology report attached to his revised petition confirmed that Tobias was not taking his prescription medication for schizophrenia, and he had cocaine in his system at the time of the incident. Trial counsel had not informed the defendant about the laboratory report. The defendant claimed that the State's witness, Devereaux Lang, had lied in his statement to the police. A summary of Lang's statement to the police was attached as an exhibit.

¶ 25    The defendant further asserted that Dejuan Lockett would have testified that the defendant acted in self-defense, but his trial counsel had failed to interview the eyewitness. The defendant had not been able to obtain an affidavit from Dejuan before the revised petition was filed.

¶ 26    The defendant in his revised amended postconviction petition additionally claimed that he was denied due process and equal protection. He argued that the circuit court had reason to believe that the defendant's self-defense claim would have precluded the defendant from being found guilty of second degree murder. The circuit court should have *sua sponte* refused to accept the defendant's guilty plea until trial counsel had fully explained all possible defenses. The defendant additionally argued that the State committed prosecutorial misconduct because it failed to inform the defendant and the circuit court of the defendant's claim of self-defense. The defendant also claimed that his sentence was excessive where he was sentenced to the maximum sentence even though it was the defendant's first Class X offense.

¶ 27    On September 21, 2020, the defendant filed a motion for leave to supplement the revised amended postconviction petition with an affidavit of Dejuan Lockett. An order was

8

entered, without objection by the State, allowing the affidavit of Dejuan Lockett to be incorporated into the defendant's petition.

¶ 28    Dejuan, in his affidavit, averred that he had witnessed the altercation between the defendant and Tobias that occurred on October 20, 2014. He knew the defendant but did not know Tobias. Dejuan explained that the defendant was standing on the street, and he witnessed Tobias "rush [the defendant] and head butt him." The defendant defended himself by "tackling" Tobias. The two wrestled on the ground and then the defendant got up and ran. Dejuan believed that the defendant had acted reasonably. Dejuan was never questioned by the police or by an attorney prior to the plea hearing.

¶ 29    The State filed a motion to dismiss and claimed that the defendant was unable to demonstrate a plausible defense even with the affidavit of Dejuan Lockett. The defendant had not demonstrated that a decision to reject his plea bargain would have been rational under the circumstances of his case. The State further argued that the defendant was not entitled to an evidentiary hearing and his petition should be dismissed.

¶ 30    On April 14, 2021, the circuit court held a hearing on the State's motion to dismiss the defendant's revised amended postconviction petition. The State argued that defendant failed to meet his burden to vacate his guilty plea and he failed to demonstrate actual innocence or a plausible defense. The offer of proof by the State at the plea hearing included that the defendant was the initial aggressor based on an admission by the defendant. The defendant had stipulated to that admission at the plea hearing.

¶ 31    Postconviction counsel argued that the defendant was not actually guilty of the crime. The defendant pleaded guilty because he was not in possession of all of the evidence

9

that would have established his innocence. Postconviction counsel requested that the court vacate the defendant's guilty plea based on: (1) ineffective assistance of trial counsel, (2) the plea was not knowing and voluntary, and (3) the defendant was actually innocent of second degree murder.

¶ 32    Postconviction counsel argued that the defendant was never made aware of a video-recorded statement by Gearline Gross, Tobias's mother, where she had informed the police that her son suffered from schizophrenia, which attracted him "to the dark side." The defendant was additionally unaware of the State's motion *in limine* that referenced Tobias's schizophrenia and the toxicology lab report which showed that Tobias had not taken his medication. Had the defendant known of the evidence showing that Tobias suffered from schizophrenia he would not have entered a plea of guilty.

¶ 33    Postconviction counsel additionally argued that there was an eyewitness, Dejuan Lockett, that saw the defendant defending himself. Dejuan believed that the defendant had acted reasonably to defend himself. Trial counsel was ineffective for not locating Dejuan. The defendant argued that he would not have entered a plea of guilty had he been aware of Dejuan's statement, which made his plea not knowing and not voluntary.

¶ 34    The State responded that the defendant was required to provide new, material, and noncumulative evidence that would clearly and convincingly demonstrate that a trial could probably result in an acquittal regarding his claim of actual innocence, and he failed to do so. The State relied on *People v. Reed*, 2020 IL 124940, ¶ 49, which stated "[n]ew means the evidence was discovered after the court accepted the plea and could not have been discovered earlier through the exercise of due diligence." The State further argued that

Dejuan's affidavit stated a legal conclusion and had no probative value. The affidavit appeared to have contradicted the defendant's statement at the plea hearing of what had occurred on October 20, 2014. The defendant had claimed that he approached Tobias to talk to him and Dejuan's affidavit stated that the defendant was standing on the street and was approached.

¶ 35    Postconviction counsel then clarified that the defendant was not aware of the witness before the plea hearing because no one had performed a thorough enough investigation to find Dejuan. The circuit court then took the matter under advisement.

¶ 36    On July 7, 2021, the circuit court issued an order dismissing the defendant's postconviction petition. The circuit court found that the defendant's allegations were refuted by the record and the law. The circuit court found that Tobias's mental state and toxicology report were not relevant to the amount of force the defendant used in self-defense. Even if the defendant were able to demonstrate that he was not the initial aggressor, he would not have been entitled to use deadly force. The circuit court found that the defendant had not established prejudice because he had not shown that a decision to reject the plea agreement would have been rational under the circumstances. The circuit court rejected the defendant's due process, prosecutorial misconduct, and excessive sentence claims. This appeal followed.

¶ 37                                II. ANALYSIS

¶ 38    On appeal, the defendant claims that the circuit court erred in dismissing his postconviction petition at the second stage. The defendant claims that he had made a substantial showing of actual innocence and that a trial probably would have resulted in an

acquittal. The defendant additionally claims that he made a substantial showing that his trial counsel was ineffective for advising him to plead guilty without discussing discovery or investigating the allegations.

¶ 39　The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) allows a defendant to collaterally attack a final judgment and is not a substitute for an appeal. *People v. Edwards*, 2012 IL 111711, ¶ 21. "Any issues which were decided on direct appeal are barred by *res judicata*; any issues which could have been raised on direct appeal are defaulted." *People v. English*, 403 Ill. App. 3d 121, 129 (2010).

¶ 40　The Act provides a three-step process where a convicted defendant may assert a substantial denial of his or her constitutional rights which occurred in their original trial or sentencing hearing. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). During the first stage of postconviction proceedings, the defendant has a "low threshold" and only needs to provide sufficient facts to present the gist of a constitutional claim. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). During the second stage, the legal sufficiency of the petition is tested. *People v. Domagala*, 2013 IL 113688, ¶ 35. The State may file an answer or move to dismiss at this stage. 725 ILCS 5/122-5 (West 2020). The defendant has the burden to make a substantial showing of a constitutional violation. *Domagala*, 2013 IL 113688, ¶ 35. The petition is dismissed if no showing is made by the defendant. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). When the petition sets forth a substantial showing of a constitutional violation, the petition advances to the third stage where the circuit court conducts an evidentiary hearing. *People v. House*, 2021 IL 125124, ¶ 17. A postconviction petition

12

dismissal without an evidentiary hearing is reviewed *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 41    The defendant claims he can demonstrate an affirmative defense of self-defense to the charge of second degree murder. A person acts in self-defense where: (1) unlawful force was threatened against a person, (2) he is not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed that the danger required the use of force applied, and (6) the use of force was objectively reasonable. *People v. Lee*, 213 Ill. 2d 218, 225 (2004).

¶ 42    In a postconviction proceeding, an actual innocence claim is shown where evidence is (1) newly discovered, (2) material, (3) noncumulative, and (4) of such conclusive character that it would probably change the result on retrial. *People v. Griffin*, 2022 IL App (1st) 191101-B, ¶ 55. Newly discovered evidence is evidence that was discovered after the plea was accepted by the circuit court and that evidence could not have been discovered earlier through the exercise of due diligence. *People v. Reed*, 2020 IL 124940, ¶ 49. A guilty plea does not bar a claim of actual innocence under the Act. *Reed*, 2020 IL 124940, ¶ 57.

¶ 43    The defendant argues that there is newly discovered evidence in his case because he was not aware at the time of the plea hearing that Dejuan had witnessed the altercation. During the plea hearing, the defendant stated that the State's witness was lying but he did not have any witnesses. His friends that lived in that neighborhood were inside during the altercation. After the postconviction petition had been filed, Dejuan was located by a private investigator. Dejuan averred that Tobias was the aggressor, which countered the

13

evidence that the defendant was the initial aggressor and not entitled to the use of deadly force. The defendant, however, did not provide any new evidence demonstrating that the use of deadly force was objectively reasonable which would have probably changed the result at a trial.

¶ 44 The defendant further argues that he received ineffective assistance of plea counsel for failing to divulge discovery information and for not investigating his self-defense claims by locating Dejuan. "The sixth amendment guarantees a criminal defendant the right to effective assistance of trial counsel at all critical stages of the criminal proceedings, including the entry of a guilty plea." *People v. Brown*, 2017 IL 121681, ¶ 25. Claims of ineffective assistance of counsel are governed by the familiar two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to establish a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance resulted in prejudice. *People v. Hughes*, 2012 IL 112817, ¶ 44. For a guilty-plea defendant to satisfy the second prong, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

¶ 45 This case involves counsel's duty to investigate and share information with the defendant. "Defense counsel has a professional obligation, both legal and ethical, to explore and investigate a client's case." *People v. Makiel*, 358 Ill. App. 3d 102, 107 (2005). Decisions regarding which items received in discovery that a defense attorney chooses to share with or discuss with his or her client is a matter of trial strategy. *People v. Walker*,

14

2019 IL App (3d) 170374, ¶ 18. That decision by defense counsel "is afforded a strong presumption that it was the product of sound trial strategy rather than incompetence." *Walker*, 2019 IL App (3d) 170374, ¶ 18. The defendant may rebut the presumption by showing that withheld information was relevant to cast doubt on the State's ability to prove him guilty or relevant when deciding to plead guilty. *Walker*, 2019 IL App (3d) 170374, ¶ 18.

¶ 46    An ineffective assistance of counsel claim may be disposed of without addressing counsel's performance if the defendant did not suffer prejudice. *People v. Hale*, 2013 IL 113140, ¶ 17. To show prejudice, the defendant must demonstrate that there is a reasonable probability that he would have insisted on proceeding to trial and would not have pleaded guilty, but for plea counsel's errors. *Brown*, 2017 IL 121681, ¶ 26. Furthermore, for an ineffective assistance of plea counsel claim, a conclusory assertion that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice. *Brown*, 2017 IL 121681, ¶ 26. The relevant surrounding circumstances are considered when assessing prejudice. *Brown*, 2017 IL 121681, ¶ 48. The defendant must convince the circuit court that his decision to reject the plea bargain would have been rational under the circumstances. *People v. Valdez*, 2016 IL 119860, ¶ 29.

¶ 47    The defendant argues that had plea counsel divulged evidence that would have supported his self-defense claim, he would have proceeded to trial. This evidence includes the video-recorded statement from Tobias's mother who informed the police that Tobias suffered from schizophrenia and was "attracted to the dark side," he heard voices, had a split personality, and had previously threatened his parents' lives as well as his own. This

15

evidence also includes the toxicology report which the defendant claimed demonstrated that Tobias was not taking his medication. The defendant claimed that the toxicology report supported the defendant's claim that Tobias was acting wild and violently, which would have supported his defense.

¶ 48　The defendant, however, had stipulated to the factual basis where the defendant admitted to confronting Tobias over money; he admitted to swinging at Tobias first; and he admitted to looking through Tobias's wallet after the fight. Based on the defendant's admissions, he was not entitled to use deadly force as he was the initial aggressor. The defendant failed to demonstrate how trial counsel's tactics were unreasonable. Tobias's mental health information would have had no impact on the defendant's self-defense claim where the defendant was the initial aggressor.

¶ 49　Had a jury believed that Tobias was the aggressor based on Dejuan's testimony, the defendant would still have been required to demonstrate that the use of deadly force was reasonable and necessary. Dejuan's affidavit, however, did not demonstrate that the defendant's use of force was objectively reasonable. The defendant's revised amended postconviction petition failed to show that the defendant had a plausible defense other than an unreasonable belief in self-defense.

¶ 50　The record demonstrated that the defendant had discussed his self-defense claim with his counsel. The parties considered his self-defense claim while negotiating the plea agreement. The State contemplated that the defendant could possibly have established an unreasonable belief in self-defense. The State reduced the charge to second degree murder

based on the defendant's self-defense claim. The defendant agreed that he was justified in the use of deadly force in defense of himself, but such belief was unreasonable.

¶ 51 The defendant chose to plead guilty to a reduced charge that his attorneys had negotiated for him. He faced a sentence for the first degree murder charge between 20 to 60 years to be served at 100%. The defendant chose to accept a reduction in the charge by pleading guilty to second degree murder and a sentence of 30 years in the Illinois Department of Corrections, where truth in sentencing did not apply.

¶ 52 The defendant did not demonstrate prejudice because he failed to show that his decision to reject his plea bargain would have been rational according to the circumstances in his case. If the defendant proceeded to trial, he would need to overcome an overwhelming amount of information against him, including his own admission that he was the initial aggressor, which would have disposed of his claim of self-defense. The defendant also did not provide newly discovered evidence that the use of deadly force was objectively reasonable. The circuit court properly granted the State's motion to dismiss the defendant's postconviction petition at the second stage.

¶ 53                                   III. CONCLUSION

¶ 54 For the reasons stated above, we affirm the order of the circuit court of St. Clair County.

¶ 55 Affirmed.

17